Ulyses Barnett HOOKS, Jr.,
Petitioner,

v.

The STATE OF OKLAHOMA and Park J. Anderson, Warden, Respondents.

Civ. No. 74–195–D.

United States District Court,
W. D. Oklahoma,
Civil Division.

Feb. 10, 1975.

James C. Chandler, Oklahoma City, Okl., for petitioner.

Larry Derryberry, Atty. Gen., Oklahoma City, Okl., for respondents.

## MEMORANDUM AND ORDER

DAUGHERTY, Chief Judge.

The petitioner, Ulyses Barnett Hooks, Jr., a prisoner in the Oklahoma State Penitentiary at McAlester, Oklahoma, submitted to this court on February 22, 1974 his Petition for Writ of Habeas Corpus in which he challenged the validity of the judgment and sentence of the District Court of Oklahoma County, State of Oklahoma, in case No. CRF–72–1444.

As grounds for relief he alleged:

1. The fruits of a constitutionally invalid search were received in evidence at his trial;

2. There was received in evidence at his trial a statement obtained from the petitioner without him first being given the warnings required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966);

3. He was denied a proper appeal because three photographs received in evidence were lost or misplaced during the trial and could not be included in the record on appeal.

The Attorney General for the State of Oklahoma thereafter filed the Response required by the court and submitted the original record including the transcript of trial of petitioner's case. Subsequently, on August 13, 1974, the court examined the files and records herein together with those in said case No. CRF–72–1444 and determined the petitioner's contention concerning his appeal to be without merit, but further found, however, that the remaining allegations did present material issues of fact requiring an evidentiary hearing. Pursuant to the authority of Reed v. United States, 438 F.2d 1154 (CA10 1971) the court directed these issues to be presented to the court on written interrogato-

ries and answers thereto by all witnesses possessing pertinent information. The court appointed counsel to represent the petitioner.

The petitioner has filed herein his own deposition, that of his co-defendant and two of the arresting officers. Counsel for both sides have now submitted briefs in support of their positions and advised the court that they have nothing further to present to the court and the matter is ready for final decision. Having examined the files and records herein and all the interrogatories and answers submitted by the parties, together with the original record and transcript of trial in said case No. CRF–72–1444 the court makes the following Findings of Fact and Conclusions of Law.

## I. FINDINGS OF FACT

1. In the early morning hours of June 15, 1972, a Kerr-McGee service station at 5101 N. Western in Oklahoma City, Oklahoma, was burglarized and 9 tires and a tool box were taken. The tires bore the owner's price code and price tags.

2. About 4:00 a. m. that morning officers Don Smith and Larry Rogers, Oklahoma City Police Department, observed a 1964 Chevrolet traveling in a southerly direction on Grand approaching Eastern. The vehicle stopped at the stop sign and then proceeded south on Eastern at a high rate of speed. Rogers, who was driving the police car pulled in behind the vehicle and pursued it until it pulled into a driveway at 1905 N.E. 53rd Street, Oklahoma City, Oklahoma. The occupants of the vehicle did not live at that address and did not know anyone residing there.

3. The car was stopped because of the traffic offense committed in the presence of the officers and not because the occupants were suspected of committing a felony.

4. Curtis Adams was the driver and owner of the vehicle. The petitioner was a passenger therein.

5. As the officers approached the vehicle in which the petitioner was riding they observed in the backseat 4 new tires which still had the discount price tags attached to them.

6. The officers placed the subjects in the police car and before any interrogation was undertaken Officer Rogers advised them of their full *Miranda* rights. Both were asked if they understood their rights and both answered affirmatively.

7. Thereafter, in response to an inquiry concerning where they had obtained the tires the petitioner Hooks stated he had purchased the tires from a man, whose name he could not remember, at the Red Pussycat Club, located at N.E. 23rd and Bryant in Oklahoma City, Oklahoma.

8. While Officer Smith was writing Adams a traffic citation, based upon what he had observed and the statement of the petitioner, Officer Rogers obtained the keys to the Adams vehicle and opened the trunk. There he observed 5 more new tires and a tool box.

9. The trunk was opened without the permission of the owner and before the officers knew of the service station burglary at 5101 N. Western, Oklahoma City, Oklahoma.

10. After the petitioner and Adams were placed in the police car they were not free to leave during the on-the-spot questioning and further investigation.

11. Officer Paul D. Taylor and his partner who were also members of the Oklahoma City Police Department arrived at the scene after the search had been made and upon learning of the situation immediately starting checking the area for a service station that might have been burglarized. They left the location around 4:30 a. m. and at approximately 4:50 a. m. they found the Kerr-McGee Service Station at 5101 N. Western with a window broken out. A further check indicated some tires had been taken off the racks.

12. After this the petitioner and Adams were placed under arrest and transported to the Oklahoma City Police Station where they were booked on a charge of burglary.

13. The petitioner was subsequently charged, tried and convicted in said case No. CRF–72–1444 of the offense of concealing stolen property after former conviction of a felony. At the trial the statement of petitioner Hooks was received without objection and three photographs of the items recovered in the search of the Chevrolet were admitted into evidence over the objections of defense counsel.

## II. CONCLUSIONS OF LAW

■ 1. The statement of the petitioner was made after the police officer had complied with the constitutional requirements enumerated in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). It was not constitutionally impermissible and there was no error in allowing the officer to testify concerning it at the trial.

2. The search of the Cheverolet was not constitutionally invalid as it was within the exception to the general rule against warrantless searches which permits the search of an automobile which has been lawfully stopped where there is probable cause to support the search and "where it is not practicable to secure a warrant because the vehicle could be quickly moved out of the locality or jurisdiction in which the warrant must be sought." Carroll v. United States, 267 U.S. 132, 153, 45 S.Ct. 280, 285, 69 L.Ed. 543 (1925).

## III. COMMENT

■ When the police officers observed the driver of the 1964 Chevrolet commit a traffic violation in their presence they clearly had the right, and the duty, to stop the vehicle. The car attempted to elude the pursuit. When finally it was stopped, the officers were able to see in plain view 4 obviously new tires in the backseat. The mere obser-

vation did not constitute a search. United States v. Lee, 274 U.S. 559, 47 S.Ct. 746, 71 L.Ed. 1202 (1926). As noted in Ellison v. United States, 93 U.S.App.D.C. 1, 206 F.2d 476, 478 (1953):

"Nor did mere observation constitute a 'search'. If an officer sees the fruits of crime—or what he has good reason to believe to be the fruits of a crime—lying freely exposed on a suspect's property, he is not required to look the other way, or disregard the evidence his senses bring him. Law enforcement is difficult enough, without requiring a police officer to free his mind of clues lying flatly before him."

Considering the hour, the apparent effort to elude the officers, and the presence of the tires in the backseat the officers had reasonable grounds to suspect that criminal activity was afoot and to at least temporarily detain the passenger in the vehicle, petitioner, for investigative purposes. Temporary detention and interrogation of persons by police in the course of their duties is proper even though there may not be sufficient grounds for arrest. United States v. Brumley, 466 F.2d 911 (CA10 1972). In the case of United States v. Sanchez, 450 F.2d 525, 528 (CA10 1971), the court elaborated upon the rule:

"Temporary detention for limited investigatory purposes, as well as a full blown arrest, is protected by the Fourth Amendment. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). However, in Terry it was observed that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest, and that the test of any governmental invasion of a citizen's personal security is its reasonableness in the light of all the surrounding circumstances.

In this same vein it has been held that probable cause to arrest requires

something more than probable cause to temporarily detain for the purpose of attempting, for example, some on-the-spot questioning and that, as concerns the latter, brief detention under circumstances that would not justify an arrest is not ipso facto unconstitutional. See such cases as Wilson v. Porter, 361 F.2d 412 (9th Cir. 1966); United States v. Unverzagt, 424 F.2d 396 (8th Cir. 1970); and United States v. Oswald, 441 F.2d 44 (9th Cir. 1971). And in United States v. Harflinger, 436 F.2d 928 (8th Cir. 1970), cert. denied, 402 U.S. 973, 91 S.Ct. 1660, 29 L.Ed.2d 137, it was held that a brief detention based on an officer's reasonable suspicion that criminal activity was afoot is constitutionally permissible for the purposes of a limited inquiry and that incriminating evidence which may come to the officer's attention during such period of detention can become a reasonable basis for effecting a valid arrest."

So, in United States v. Saldana, 453 F.2d 352, 354 (CA10 1972), the court was able to conclude:

"The law now appears to be well settled that, under appropriate circumstances, police officers in the course of their duties may approach and question persons as to possible crimes and investigate suspicious behavior, even though there are insufficient grounds for arrest."

In Adams v. Williams, 407 U.S. 143, 145, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972) the Supreme Court declared:

"The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, Terry recognizes that it may be the essence of good police work to adopt an intermediate response. See id. [392 U.S.] at 23, 88 S.Ct., at 1881. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time."

A well founded suspicion is all that is necessary to authorize a brief detention for limited inquiry. Stone v. Patterson, 468 F.2d 558 (CA10 1972).

█ Before the driver or the petitioner was questioned by the officers, the court is satisfied that they had been properly advised of their rights in the manner prescribed by Miranda v. Arizona, supra. At the trial the testimony of officer Rogers concerning the advice of rights, was given without objection. By deposition herein his testimony has been amplified to clarify precisely the rights explained to the petitioner. After acknowledging that he understood his rights the petitioner came forth with the wholly improbable story that he obtained the tires at a negro night club on the east side of Oklahoma City. He could not remember the man's name or otherwise identify this individual. The story was rendered even more suspect because the officers knew that when first seen the vehicle was coming from a northwesterly direction and the club was south and east of their location. Combined with the suspicious circumstances already known to the officers the incredible story furnished sufficient probable cause to justify an entry into the trunk of the vehicle. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) stands for the proposition that if there is probable cause an automobile, because of its mobility, may be searched without a warrant in circumstances that would not justify a warrantless search of a house or office. Stone v. Patterson, supra. The suspects had pulled into a strange driveway where they had no right to be and the car was readily available for a quick departure if the opportunity presented itself. The situation presented exigent circumstances justifying the immediate search. See United States v. Pollard,

466 F.2d 1 (CA10 1972), cert. denied 409 U.S. 1127, 93 S.Ct. 946, 35 L.Ed.2d 259. We conclude that:

"Under the facts of these cases the state police officers would have been derelict in their duty to the public if they had not done exactly what they did." United States v. Miller, 452 F. 2d 731, 733 (CA10 1971).

## IV.  ORDER

Accordingly, since the court on August 13, 1974, adjudged that there was no merit to petitioner's contention that he had been denied a fair appeal and has further determined adversely to him, as shown by the above Findings of Fact and Conclusions of Law the issues concerning his statement and the search of the motor vehicle the Petition for Writ of Habeas Corpus will be denied.

It is so ordered.