UNITED STATES of America, Appellee,

v.

Donald Edward CLAY, Appellant.

No. 80–1079.

United States Court of Appeals,
Eighth Circuit.

Submitted May 19, 1980.

Decided Feb. 9, 1981.

**158**

Benjamin D. Entine, Asst. Fed. Pub. Defender, W. D. Mo., Kansas City, Mo., for appellant.

Kenneth Josephson, Asst. U. S. Atty., Kansas City, Mo., for appellee.

Before HENLEY and McMILLIAN, Circuit Judges, and ROY,* District Judge.

McMILLIAN, Circuit Judge.

Appellant Donald Clay appeals from a judgment finding him guilty of possession of a firearm as a convicted felon, 18 U.S.C. App. § 1202(a)(1). The district court imposed an eighteen-month suspended sentence and four years of probation. For reversal appellant argues that the district court erred in failing to sustain his motion to suppress physical evidence obtained as a result of an alleged illegal search and seizure in violation of his fourth amendment rights. For the reasons discussed below, we reverse and vacate the judgment of the district court.

---

\* The Honorable Elsijane T. Roy, United States District Judge for the Eastern District of Arkansas, sitting by designation.

1. Three other men approached the house and were detained inside by the police. Two of the men were identified as Edgar Wright and Theotis Byers; the third man's identity was never determined. Wright and Byers testified that they had arrived at the home before Clay and had also been detained by the police officers. Sgt. Moss testified that Clay arrived first and the others came shortly after. The district court accepted the officer's account of the order of arrival. At trial the testimony of the

## I. *Background*

Pursuant to a state search warrant issued on March 23, 1979, police entered the residence of Donald Love, located at 6213 Walrond, Kansas City, Missouri, in search of drugs, contraband and firearms. The search warrant was executed by uniformed and undercover agents during the early evening hours. Shortly after the search began, appellant, who was neither a suspect in the investigation nor an anticipated subject of the search, approached the house, knocked on the storm door and was confronted by Sergeant Tom Moss, an undercover police agent who was dressed in blue jeans and a T-shirt. Sgt. Moss opened the door, displayed his badge and identification, and ordered appellant into the house. Appellant immediately stepped backwards but did not attempt to run away. Sgt. Moss pulled out his revolver and again ordered appellant into the house. Appellant entered the house whereupon Sgt. Moss requested his investigator to conduct a pat down search.[1] A small quantity of marijuana and a gun were discovered.

Appellant moved to suppress the evidence seized. Appellant argued that the search was unconstitutional because it was done without a warrant, without probable cause, without consent, and not incident to a valid arrest. Appellant stressed that the stop and frisk was not based upon objective facts from which a police officer could reasonably conclude that appellant was involved in criminal activity. The government sought to justify the frisk under the doctrine of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). A full

officers present during the search indicated that the defendants were frisked immediately upon arrival at the house. The defense witnesses, however, all testified that a delay of between five and ten minutes transpired after they entered the house and the officers frisked them. The district court also credited the police account of these events surrounding the timeliness of the search and concluded that the frisk was conducted immediately upon the arrival of the visitors. The factual findings of the district court do not appear to be clearly erroneous, thus are left undisturbed by this court.

evidentiary hearing was held on November 26, 1979. Pursuant to the hearing, the district court denied appellant's motion to suppress. The only issue raised by appellant is whether the firearm was lawfully seized and properly submitted into evidence over appellant's objection.

## II. *Discussion of Stop and Frisk*

Whenever a police officer accosts an individual and restrains his freedom to walk away, he has "seized" that person. *Brown v. Texas*, 443 U.S. 45, 50, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357 (1979); *United States v. Palmer*, 603 F.2d 1286, 1288 (8th Cir. 1979). A seizure may be accomplished either by physical restraint or by sufficient show of authority. *Terry v. Ohio, supra*, 392 U.S. at 16, 88 S.Ct. at 1877. Thus, when Sgt. Moss ordered appellant into the house at gunpoint, he restricted appellant's motion and performed a seizure subject to the reasonableness requirement of the fourth amendment.

We must determine initially whether Sgt. Moss' action was justified at its inception and, if so, whether the subsequent "pat down" was reasonably related in scope to the circumstances that justified the interference in the first place. *Id.* at 19, 20, 88 S.Ct. at 1878, 1879.

In determining whether Sgt. Moss had a basis for initiating a frisk, there are two inquiries to be made: whether the officer was rightfully in the presence of the party frisked so as to be endangered if that person was armed, and whether the officer had a sufficient degree of suspicion that the party to be frisked was armed and dangerous. *Brown v. Texas, supra*, 443 U.S. at 50–53, 99 S.Ct. at 2640–2642.

Only specific articulable facts taken together with rational inferences warrant the intrusion of an investigatory search. *Terry v. Ohio, supra*, 392 U.S. at 21, 88 S.Ct. at 1879. In making an assessment whether the seizure of appellant was justified, we judge the facts using an objective standard: would the facts available to the officer at the moment of seizure warrant a person of reasonable caution in the belief that the action taken was appropriate to protect his life or the life of innocent bystanders? *Id.* at 21, 22, 88 S.Ct. at 1879, 1880.

First, we consider whether Sgt. Moss possessed specific, objective facts sufficient to establish that the initial seizure of appellant was justified. In his testimony, Sgt. Moss said that the search of Donald Love's house had taken place during the evening hours; that marijuana, firearms and ammunition had been discovered in the house previous to appellant's arrival; and that he knew Love was known to be armed and dangerous. In addition, Sgt. Moss testified appellant's "hesitation" in complying with the order to enter the house and the danger associated with a white officer in a predominantly black neighborhood placed him in reasonable apprehension of bodily harm. The district court held that these "many specific facts quite naturally led [Sgt. Moss] to a reasonable suspicion that any person that came to the door was potentially armed and dangerous." *United States v. Clay*, No. 79–00117–01–CR–W–4 (W.D.Mo. Dec. 6, 1979) (order denying defendant-appellant's motion to suppress). We disagree.

An experienced police officer should not be apprehensive about executing a search warrant during the early evening hours in a predominantly black neighborhood that is not a high crime district. There is nothing inherently suspicious about a black man walking up to a private home on a street in a black neighborhood at 7:30 p. m. *See United States v. Beck*, 602 F.2d 726, 729 (5th Cir. 1979). Police cannot have grounds for suspicion based solely on the race of the suspect. *United States v. Rias*, 524 F.2d 118 (5th Cir. 1975). Although color of skin is an identifying factor, *United States v. Collins*, 532 F.2d 79, 82 (8th Cir.), *cert. denied*, 429 U.S. 836, 97 S.Ct. 104, 50 L.Ed.2d 102 (1976), this court has consistently rejected the use of race in combination with other factors to justify investigative searches and seizures. *United States v.*

*Nicholas,* 448 F.2d 622 (8th Cir. 1971).[2] In the case at bar, like *Nicholas,* "we think that, at best, the police were acting upon a generalized suspicion that any black person . . . might be engaged in criminal activity." *Id.* at 625.

Appellant's conduct alone was not suspicious under the circumstances; he merely hesitated and took a step or two backwards (but did not turn around) when confronted at the door by an armed man in plain clothes from inside his cousin's house. The government's emphasis that appellant's "hesitancy" created individualized suspicion falls far short of those cases dealing with flight,[3] furtive gestures,[4] or otherwise inexplicable sudden movements toward a pocket or other place where a weapon could be concealed.[5] Thus, appellant's action in stepping backwards did not justify the search.

The question remains whether the evidence of criminal activity within the house being searched justified the police in searching anyone who approached the premises. The warrant is of no help to the government in its attempt to justify the search. The warrant only gave the police authority to be on the premises, not to search anyone that came to the door during the time of the search.

Because Sgt. Moss' actions towards appellant were taken without an arrest warrant, the information to be considered is that available to the officer at the time of the stop and frisk. *Beck v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). Sgt. Moss had no factual data about appellant that would have given rise to a probability of illegal activity. "[A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." *Ybarra v. Illinois,* 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979) (warrant to search bar and bartender cannot normally be construed to authorize a search of each individual at the club). An investigatory search will be found constitutionally permissible only when supported by reasonable suspicion directed to the person to be searched, and "[this] requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be." *Id.* at 89–91, 100 S.Ct. at 341–42.[6]

█ Beyond dispute, the police may take appropriate action to ensure their own protection when officers are carrying out their duty in executing a search warrant. The scope of that protection, however, is balanced against the fourth amendment rights of others. *See* note 9 *infra.*

The government relies in part upon the fact that firearms, marijuana, cocaine and

**2.** *See also United States v. Palmer,* 603 F.2d 1286 (8th Cir. 1979) (racial unrest in area and rumors of possible gang action not sufficient basis for stopping and searching pedestrian without articulable basis for suspecting that pedestrian was involved in criminal activity).

**3.** *E. g., Sibron v. New York,* 392 U.S. 40, 66, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917 (1968) (flight at the approach of strangers or law officers is strong indicia of *mens rea,* and is a proper factor to be considered in forming a suspicion of criminal activity); *United States v. Pope,* 561 F.2d 663, 669 (6th Cir. 1977) (flight from a clearly identified law enforcement officer may furnish sufficient ground for a limited investigative stop). *See also Fisher v. State,* 493 S.W.2d 841 (Tex.Crim.App.1973) (defendant arrived during search, fled when he learned what was occurring and was observed dropping plastic bag).

**4.** *E. g., United States v. Wright,* 565 F.2d 486 (8th Cir. 1977) (erratic driving, nervous gestures and driver's apparent attempt to block officer's view of automobile interior justified search for weapons).

**5.** *E. g., Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) (pursuant to valid arrest officers may search area within the immediate control of person arrested); *United States v. Peep,* 490 F.2d 903 (8th Cir. 1974) (officer legally proceeded directly into the suspect's pocket after the suspect slapped his hand away).

**6.** *Stroeber v. Commission Veteran's Auditorium,* 453 F.Supp. 926, 932 (W.D.Iowa 1977) (police cannot conduct searches of patrons at a rock concert without individualized suspicion); *see also People v. Allen,* 50 Cal.App.3d 896, 123 Cal.Rptr. 80 (Ct.App.1975); *State v. Giltper,* 537 P.2d 14 (Hawaii 1975).

heroin were found in the apartment prior to appellant's arrival. Nothing in the record, however, establishes a nexus between the contraband discovered inside the house and appellant at the time he was stopped and frisked. Under the circumstances, it was plainly unreasonable to infer that no one other than a user of narcotics would be allowed on the premises. *See United States v. Peep*, 490 F.2d 903, 906 (8th Cir. 1974).

The government also urges the court to put great weight on the fact that Love, the target of the search, was known to be armed and dangerous. This argument is diminished largely because at the suppression hearing Sgt. Moss testified that he did not mistake appellant for the owner of the premises. Sgt. Moss also testified that he did not know that appellant had been previously convicted of a felony. Thus, the facts here do not distinguish appellant from anyone else who may have approached the house. The fourth amendment does not authorize the detention and search of all persons who may be present, *United States v. Di Re*, 332 U.S. 581, 591, 68 S.Ct. 222, 227, 92 L.Ed. 210 (1948), or all persons who may enter a premises, *United States v. Branch*, 545 F.2d 177 (D.C.Cir. 1976), during the time of the warrant's execution. In *Branch*, the court held that the search of a shoulder bag belonging to a visitor who arrived at an apartment during the execution of a warrant was not authorized under the circumstances. *Id.* at 185.[7]

Furthermore, the *Terry* majority held that under usual circumstances an officer is obligated to conduct some form of cursory investigation prior to frisking, perhaps so that the suspects may readily explain their actions before being subjected to the additional intrusion. In stating the holding of the court, Chief Justice Warren stated:

[W]here in the course of investigating this behavior he identifies himself as a policeman *and makes reasonable inquiries*, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his or others' safety, he is entitled . . . to conduct a carefully limited search.

392 U.S. at 30, 88 S.Ct. at 1884 (emphasis added).

■ Not all stops call for a frisk.[8] Protective searches are authorized only when the police officer has suspicion that the individual before him may be armed or otherwise presently dangerous. *Sibron v. New York*, 392 U.S. 40, 65–67, 88 S.Ct. 1889, 1904–05, 20 L.Ed.2d 917 (1968).

Because there was an opportunity for inquiry when appellant appeared at the door, inquiry should have been made. An officer is not warranted in relying upon circumstances deemed by him suspicious, when the means are at hand to either verify or dissipate those suspicions without risk. *See, e. g., United States v. Magda*, 547 F.2d 756, 759 (2d Cir. 1976), *cert. denied*, 434 U.S. 878, 98 S.Ct. 230, 54 L.Ed.2d 157 (1977); *Stone v. Patterson*, 468 F.2d 558 (10th Cir. 1972); *United States v. Harflinger*, 436 F.2d 928 (8th Cir. 1970), *cert. denied*, 402 U.S. 973, 91 S.Ct. 1660, 29 L.Ed.2d 137 (1971); *Hooks v. Oklahoma*, 394 F.Supp. 1262, 1266 (W.D.Okl. 1975). This is particularly true where the person in question is only a visitor to the premises and there is no evidence that the person has committed, is committing, or is about to commit a type of crime for which the offender would likely be armed or dangerous. Sgt. Moss should have provided appellant with an opportunity to explain his presence before subjecting him to a search.

To justify a search of this type, the officer must have knowledge that the visitor

---

7. The *Branch* court, in dictum, discussed but did not reach the question of whether the officers would have had reasonable suspicion sufficient to justify an "investigatory stop." 545 F.2d at 186 n.24.

8. *See* Model Code of Pre-Arraignment Procedure § 110.2(4) (Proposed Official Draft, 1975) providing that an officer who has stopped a person may pat down for a weapon "if the officer reasonably believes that his safety or the safety of others then present so requires. This requirement is "intended to preclude routine frisking in association with all stops or even some classes of stops." *Id.* *See United States v. Brignoni-Ponce*, 422 U.S. 873, 878–82, 95 S.Ct. 2574, 2578–81, 45 L.Ed.2d 607 (1975).

previously had been engaged in serious criminal conduct, *Stroeber v. Commission Veteran's Auditorium*, 453 F.Supp. 926, 931 (S.D.Iowa 1977), or that suspicion exists sufficient to draw a reasoned conclusion that the visitor is involved in the criminal activity that constituted the basis of the issuance of the search warrant, *United States v. Peep, supra*, 490 F.2d at 905–06, or that other exigent circumstances exist that justify a determination that the person with whom the officer is dealing may be armed or presently dangerous, *United States v. Santana*, 485 F.2d 365, 368 (2d Cir. 1973), *cert. denied*, 415 U.S. 931, 94 S.Ct. 1444, 39 L.Ed.2d 490 (1974).

■ The initial frisk of appellant was simply not supported by a reasonable belief that he was armed and presently dangerous, a belief which the Supreme Court has invariably held must form the predicate to a pat down search of a person for weapons. *See, e. g., Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972) (stop and frisk authorized when lone police officer, at night in a high crime district, approached a person he had previously observed and had reason to believe to be in possession of a gun and narcotics).

The state has asked this court to extend the "narrow scope" of the *Terry* doctrine to permit a frisk for weapons on less than reasonable belief or suspicion directed at the person to be frisked, simply because the person happens to arrive at the premises where an authorized narcotics search is taking place. We reject the invitation to do so.[9] Recently, the Fifth Circuit also rejected that argument in *United States v. Cole*, 628 F.2d 897 (5th Cir. 1980). In that case, state police officers lawfully obtained a warrant to search an apartment for narcotics. As the police approached the apartment, they observed Cole parking his truck at the carport attached to the rear of the premises. Cole was not a target of the warrant and was merely a visitor on the premises. Cole got out of his truck and immediately an officer frisked him for weapons, uncovering a small pistol tucked behind his belt. At trial, Cole moved that the gun be suppressed. That motion was denied and the district court later convicted Cole of unlawful possession of firearms.

The Fifth Circuit reversed the district court's decision on that count[10] holding that, "in the absence of specific articulable facts to believe that appellant was armed and dangerous, Cole's mere presence on the premises did not justify a personal search." *Id.* at 899. The governing principle in both cases is the same[11]: an officer's pat down of a person cannot be justified solely by the individual's mere presence on the premises described in the search warrant.

In our view, Sgt. Moss had nothing more than "mere suspicion" of possible criminal activity or danger based upon appellant's approach to the house. After reviewing the circumstances surrounding the stop as a whole, we conclude that Sgt. Moss did not have reasonable suspicion, based on objective facts that Clay was involved in any criminal activity. We hold that on the facts presented, the district court erred in refusing to suppress the gun seized. Such error went to the heart of the government's

---

**9.** In the interest of his own protection, Sgt. Moss could have denied appellant the right to enter the premises while the search was being conducted. *E. g., State v. Clift*, 339 So.2d 755 (La.1976) (police acted reasonably by prohibiting visitors from entering premises during execution of a search warrant). Whenever possible, an effort should be made to avoid potentially dangerous confrontations between police and private citizens. In *United States v. Miller*, 546 F.2d 251, 253 (8th Cir. 1976), this court held illegal a frisk of a person on the premises, made at least ten minutes after the police entered, because "if the defendant had been permitted to leave as requested, no officer's securi-

ty problem of any kind would have been presented."

**10.** Cole's conviction was upheld on count II which involved the admissibility of evidence resulting from the search of his truck.

**11.** The information held by Sgt. Moss at the time of the search did not even equal the information held by the arresting officers in *Cole*. The officers in *Cole* testified that they had prior information about the defendant; here, Sgt. Moss admitted at the suppression hearing "that he had never seen or heard of Donald Clay prior to his appearance at the door."

case. The judgment of the district court is reversed and vacated.