**UNITED STATES of America**

v.

**Luis JARAMILLO, Defendant.**

**No. CR 93–114.**

United States District Court,
E.D. New York.

June 1, 1993.

---

Zachary W. Carter, U.S. Atty., Brooklyn, NY (Ellen M. Corcella, Asst. U.S. Atty., of counsel), for plaintiff.

Bernard H. Udell, Brooklyn, NY, for defendant.

## MEMORANDUM AND ORDER

NICKERSON, District Judge:

Defendant Luis Jaramillo, indicted for unlawfully possessing a semi-automatic pistol, moves to suppress it. He contends that the detective who seized it had neither probable cause nor reasonable suspicion to pat him down.

I.

At the evidentiary hearing John Saager, a New York City Police Department detective, testified in substance as follows.

On January 21, 1993 at about 11:30 at night Saager and other members of the so-called Drug Enforcement Task Force went to the La Taverna Bar, a neighborhood bar at 97th Street and 37th Avenue in Corona, Queens County, New York. As they entered the bar the officers yelled "police" and told everyone to "freeze".

Jerry Speziale, the officer who first went in, saw a man take a gun from his waistband and throw it into the lap of a second person, who in turn threw the gun to the floor. Speziale and a uniformed officer went directly to those two people, while Saager approached another man sitting at a table right next to the two.

Just as Saager did that, defendant came out of the bathroom, which was about twelve feet from where the other two were sitting. Saager grabbed him and placed him up against the wall.

Speziale recovered the gun and put the two people who had handled it under arrest. He then started searching the people who had been "frozen" and on patting down defendant felt a pistol strapped to defendant's ankle underneath the right pants leg. Speziale then seized the gun.

Prior to their entry into the bar the officers had heard from an informant that a kidnapping and a killing had taken place there. At the suppression hearing, when defense counsel sought to probe the reliability of the informant, the Assistant United States Attorney objected, saying that because of "the situation surrounding the confidential source" she would not rely on the informant's statement. She argued that the officers' entry without a warrant was proper because there was public access to the bar, and that the events occurring after that entry justified the stop and frisk of defendant.

The court does not consider the testimony as to the information received from a confidential informant, even though the court must therefore decide the motion on an artificially restricted state of facts.

## II.

Defendant urges that the Supreme Court's decision in *Ybarra v. Illinois*, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), is controlling. In that case an Illinois state court issued a search warrant based on a statement by a reliable informant that on the previous day in a bar he saw 15 to 25 tinfoil packets on the person of the bartender and behind the bar, that on other occasions he had observed tinfoil packets on the bartender and in a drawer behind the bar, and that the bartender advised him that he would have heroin for sale the following day. The warrant authorized a search of the bar and of the bartender.

Officers then went to the bar, announced their purpose, and said that they were going to conduct a cursory search for weapons. An officer frisked, among others, Ybarra, who was standing at the bar, and felt "a cigarette pack with objects in it." The officer retrieved the pack, which contained six tinfoil packets of heroin.

The Supreme Court held that the evidence should have been suppressed. The Court said, among other things, that the frisk of Ybarra was not supported by a reasonable belief that he was armed and presently dangerous, a prerequisite under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), to a patdown of a person for weapons. The Court said that "the State is unable to articulate any specific fact that would have justified a police officer at the scene in even suspecting that Ybarra was armed and dangerous." 444 U.S. at 93, 100 S.Ct. at 343.

Three Justices dissented, Chief Justice Burger, and Justices Blackmun and Rehnquist. They said, among other things, that because the police were aware that heroin was being offered for sale it was reasonable for them to assume that one or more persons at the bar could have been involved with drug trafficking, a business where firearms are "tools of the trade", and they thus would be conscious of the possibility that one or more of the patrons could be armed.

In the present case the question is whether, under all the circumstances, the officers' observation of two people tossing a gun around was enough to arouse a reasonable belief that there was a lively possibility of danger to the officers at the hands of defendant. Since the officers could see no gun on defendant, they had to draw an inference he had one. This court must decide whether that proposition of fact was sufficiently likely to be true as to justify a patdown. *Cf.* Michael and Adler, *The Trial of an Issue of Fact,* 34 Columbia L.Rev. 1224, 1462 (1934).

■ Because each case depends so much on its specific facts, the cases state the criteria for making that decision in very general terms. Both the interest in freedom from a patdown making a substantial intrusion on one's personal privacy and the interest in freedom from personal physical injury are important. But plainly the latter greatly outweighs the former. *United States v. Barlin,* 686 F.2d 81, 86–87 (2d Cir.1982). That is why the test is not whether a reasonable officer has probable cause to believe the person is armed and dangerous, but whether such an officer has a reasonable suspicion for that belief. *Terry,* 392 U.S. at 21–23, 88 S.Ct. at 1879–81; *United States v. Salazar,* 945 F.2d 47, 49 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1975, 118 L.Ed.2d 574 (1992).

The majority in the *Ybarra* case did not even advert to the argument of Mr. Justice Rehnquist in dissent that the fact of drug sales in the bar suggested a likelihood that one or more of its patrons would be armed.

■ In the present case the agents knew that at least one gun was in the La Taverna bar and that at least two of the patrons with a relationship to each other had sought to hide it. The place was a neighborhood bar in Corona, Queens County, where it would not be surprising if some of those who frequent it are known to each other. It hardly seems unreasonable to suspect under the circumstances that a person who comes out of a men's room within a few feet of two gun handlers would have some connection with them and might also be armed.

The *Ybarra* case is not comparable. There no gun was present. Nothing was immediately evident that suggested violence. There was no suggestion that the bartender was

armed or anyone else in the bar was armed to protect a major drug conspiracy or a large cache of heroin. The bartender gave every appearance of being a small time drug retailer.

The facts in this case are not comparable to those in other cases in which the evidence has been suppressed for lack of reasonable suspicion. For example, in *United States v. Santillanes*, 848 F.2d 1103 (10th Cir.1988), the Court of Appeals found that a pat-down was not justified where the defendant had passed through an airport metal detector and police suspected only that he had travelled out of state in violation of his pretrial release for a prior offense. In *United States v. Clay*, 640 F.2d 157 (8th Cir.1981), the court found no reasonable suspicion as to an unknown individual who knocked on the door of a house that police were searching for drugs, contraband and weapons. *See also, United States v. Cole*, 628 F.2d 897 (5th Cir.1980) (no reasonable suspicion to pat down person who pulled into parking spot attached to residence which police were about to search for drugs), *cert. denied*, 450 U.S. 1043, 101 S.Ct. 1763, 68 L.Ed.2d 241 (1981); *United States v. Perez*, 732 F.Supp. 347 (E.D.N.Y.1990) (evidence suppressed where police searched unknown person seen with suspected drug dealer in outdoor parking lot).

These cases did not concern a contained area in which a gun had already been found on individuals possibly connected with the person patted down.

This court holds that, based on the facts the officers learned after entering the bar, the officers were entitled to have a reasonable suspicion that defendant was armed and dangerous.

Defendant's motion is denied. So ordered.