**UNITED STATES of America, Plaintiff,**

v.

**Richard Bernard REMBERT, Defendant.**

**Crim. No. 4–93–91.**

United States District Court,
D. Minnesota,
Fourth Division.

Nov. 18, 1993.

Asst. Federal Public Defender Katherian D. Roe, Minneapolis, MN, for defendant.

Asst. U.S. Atty. B. Todd Jones, Minneapolis, MN, for the U.S.

## ORDER

ROSENBAUM, District Judge.

This matter is before the Court on the report and recommendation issued by the Honorable Franklin L. Noel, United States Magistrate Judge, on October 12, 1993. The magistrate recommends that the defendant's motion to suppress evidence found on his person be granted, and that his motion to suppress statements be denied. The government filed an objection to the report and recommendation, pursuant to Local Rule 72.-1(c)(2).

Based upon a *de novo* review of the record herein, the Court adopts in all respects the magistrate's report and recommendation. Accordingly, IT IS ORDERED that:

1. Defendant's motion to suppress evidence found on his person is granted.

2. Defendant's motion to suppress statements is denied.

## REPORT & RECOMMENDATION

NOEL, United States Magistrate Judge.

This matter was before the undersigned United States Magistrate Judge on September 29, 1993, for a hearing on defendant's motion to suppress evidence and statements. Defendant claims that his arrest was illegal and he moves to suppress evidence and his post-arrest statements, claiming they are the fruit of his illegal arrest. Defendant was present at the hearing.

Defendant is charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). Defendant has two 1981 felony convictions in the State of Indiana for armed robbery and attempted robbery for which he served a period of imprisonment.

At the hearing the court heard the testimony of Minneapolis Police Officer Eric Lukes, Special Agent for the Bureau of Alcohol, Tobacco, and Firearms Colburn McClelland (hereinafter "Special Agent"), and Minneapolis Police Officer Lynn Meuwissen. Government Exhibits one and two were received into evidence.[1] For the reasons set forth in this opinion, the court will recommend that defendant's motion to suppress evidence found on defendant's person be granted, but that defendant's motion to suppress statements be denied.

### I. *Findings of Fact*

Officer Lukes testified that he participated in the search of apartments two and four at 2021 3rd Ave. South (known as the "Sobriety House"), on the afternoon of February 15, 1993. Minneapolis Police Officers conducted the search pursuant to a warrant. *See* Government Exhibit one. He had been briefed about the case at the Precinct that morning. Lukes reviewed the affidavit and the search warrant. Officer Lukes had not been involved in the investigation prior to that morning.

The affidavit stated that Officer Meuwissen had sent a Confidential Reliable Informant (CRI) to attempt to buy crack/cocaine at apartment two. The CRI was approached by a man who stated that he was "Otis the caretaker." A woman interrupted the interchange and stated that the CRI would have to wait for a rock of crack, because the supplier had not arrived yet to sell. The woman was described by the CRI as a black female, short and very thin who called herself "Black."

---

1. Government Exhibit one is the search warrant for 2021 3rd Ave. South Apt. two, Minneapolis, MN.

Government Exhibit two is a copy of the front and back of Special Agent McClelland's *Miranda* card.

Officers found two women in apartment two, and they were trying to determine if either was "Black." Officers saw paraphernalia sitting on the table, including a plastic pop bottle with a tube sticking out of it, bongs, and pill boxes. Officers had not recovered any evidence such as drugs or weapons from the apartment.

After about twenty or thirty minutes, Officer Lukes exited the apartment and went into the hallway of the building. He was the only officer in the hallway. Defendant Rembert knocked on the locked front door of the building. The top half of the door was made of glass, so that it could be seen through. Officer Lukes was wearing a jacket with the word "Police" on the front and back. He went down the hallway about 15 to 20 feet before opening the door. Defendant Rembert did not make any attempt to flee. Officer Lukes asked defendant what he wanted. Defendant Rembert said that he was looking for "Black." Defendant entered the building.

Officer Lukes wanted to have the defendant identify whether either of the women detained in apartment two were "Black." Officer Lukes grabbed defendant by the arm. He performed a quick pat search of defendant. While Officer Lukes was performing the pat search, Rembert brought his right arm down. Officer Lukes grabbed defendant's wrist area and put his hand up against the wall. He felt a lump, that felt like a gun, in defendant's wrist area. Officer Lukes recovered the loaded revolver that had been concealed in defendant's jersey glove.

Officer Lukes yelled "gun" at which point other officers came out of the apartments and handcuffed defendant. Officers brought defendant into apartment two to identify "Black." Defendant said that "none of them are her."

It appears that Rembert was, therefore, released because Special Agent McClelland testified that defendant was again arrested on August 25, 1993 pursuant to the indictment in the instant case which had been returned in May, 1993. On August 26, Agent McClelland transported defendant from Hennepin County Jail to the Federal Building in Minneapolis. He did not speak to defendant at the Hennepin County Jail or in the car ride to the Federal Building in Minneapolis.

At the Federal Building, Agent McClelland advised defendant of his *Miranda* rights in the presence of Deputy United States Marshal Bill Wenzel. Agent McClelland read the rights from a card in his pocket. *See* Government Exhibit two. Agent McClelland asked defendant if he understood his rights and whether he would still agree to. Defendant answered "yes." Agent McClelland asked defendant if he understood his rights, to which he replied that he did. Agent McClelland testified that defendant appeared coherent, lucid, totally alert and not under the influence of drugs or alcohol. Defendant did not sign any waiver of his *Miranda* rights. After reading defendant his rights, Wenzel went back to his desk, six feet away. Before questioning, defendant requested a phone to contact his sister or girlfriend.

During the interview, defendant was seated on a bench in a cell. The door was open with Agent McClelland leaning against the bar outside. Agent McClelland asked defendant to tell him about his arrest on February 15, 1993. Defendant said that he was arrested when he was caught with a gun. He went to the building to visit a friend. After he knocked on the door, a man answered and asked him what he wanted. The Officer grabbed him and put him against the wall. The Officer frisked defendant and found a gun in defendant's glove.

Defendant was not handcuffed when Agent McClelland spoke with him. Agent McClelland made no promises to defendant. He did not use force or threats. The interview lasted for fifteen minutes. Agent McClelland asked defendant to write the information down to ensure the statement was accurate. Defendant told him that he did not want to write anything down until he had talked to an attorney. At this point, the interview ceased. Prior to this invocation of his right to counsel, defendant never asked to stop the interview or asked for an attorney to be present.

Defendant called Minneapolis Officer Lynn Meuwissen to testify. Officer Meuwissen submitted the affidavit to obtain the February search warrant for the Sobriety House.

The application for the search warrant did not mention Rembert. She asked Officer Lukes to participate in the search. Officer Meuwissen testified that Lukes told her that as soon as Rembert came to the door he was arrested for loitering with intent to buy or sell drugs. Officer Lukes conducted a search incident to arrest. Officer Meuwissen was not present during the arrest or search of defendant Rembert.

## II. *Conclusions of Law*

A. *Evidence found on defendant's person must be suppressed as the fruit of an illegal search.*

■ The gun and drugs seized from defendant's person were found pursuant to a search made incident to a pat down by Officer Lukes. As the Officer did not have a reasonable suspicion to justify an investigatory detention, the evidence must be suppressed.

Reasonable suspicion to stop and detain a suspect for investigatory questioning must be based on "specific and articulable facts". *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). The court must consider the facts in the context of the totality of the circumstances and also consider them in light of the significance that a law enforcement officer experienced in detecting criminal activity would attach to them. *See U.S. v. Turpin,* 920 F.2d 1377, 1385 (8th Cir.1990), *cert. denied sub nom. Williams v. United States,* 499 U.S. 953, 111 S.Ct. 1428, 113 L.Ed.2d 480 (1991). To detain a person on the basis of reasonable suspicion, the officer must also have objective information linking the person to criminal activity. *Brown v. Texas,* 443 U.S. 47, 51, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357 (1979).

The government contends that Officer Lukes had reasonable suspicion to detain defendant at the time Officer Lukes initially asked defendant to step inside the Sobriety House. The government argues that reasonable suspicion is supported by the following facts: 1) Police were searching for drugs at the location pursuant to a valid warrant, and individuals involved in drug trafficking routinely possess weapons; 2) Defendant asked for "Black"—a person identified in the search warrant affidavit as a suspected dealer in drugs, which indicated that defendant may also be involved in drug trafficking; 3) Defendant made a furtive gesture when touched by Officer Lukes; and 4) Defendant knocked on the door and voluntarily entered when invited by an individual easily identified as a police officer. The Government contends that the totality of the circumstances indicate that the Officer had reason to be concerned for officer safety prior to bringing defendant into the crime scene for investigative purposes (identifying "Black"), and was justified in conducting a brief pat search.

The facts here are indistinguishable from those in *United States v. Clay,* 640 F.2d 157 (8th Cir.1981). In *Clay,* the defendant knocked on the door while officers were conducting a search of the house. A police officer opened the door and ordered Clay to come into the house. The defendant took a step backwards, and the officer repeated the order and pulled out his weapon. Clay entered the house and was immediately subjected to a pat-down. The officer recovered a gun and marijuana from Clay.

The Eighth Circuit concluded that the officer had only a "mere suspicion" of possible criminal activity or danger based upon appellant's approach to the house. The court stated that, "[A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." *Clay* 640 F.2d at 160, quoting *Ybarra v. Illinois,* 444 U.S. 85, 91, 100 S.Ct. 338, 342, 62 L.Ed:2d 238 (1979). The Fourth Amendment does not authorize the search of all persons who may enter a premises during the time of the warrant's execution. 640 F.2d at 161, *See also United States v. Branch,* 545 F.2d 177 (D.C.Cir.1976).

■ An officer cannot rely upon circumstances that he deems suspicious to conduct a pat-search when he could either verify or dissipate those suspicions without risk. *See, e.g., United States v. Magda,* 547 F.2d 756, 759 (2d Cir.1976) *cert. denied,* 434 U.S. 878, 98 S.Ct. 230, 54 L.Ed.2d 157 (1977); *United States v. Harflinger,* 436 F.2d 928, 759 (8th Cir.1970), *cert. denied,* 402 U.S. 973, 91 S.Ct. 1660, 29 L.Ed.2d 137 (1971). The *Clay* Court

found this especially true when the person is only visiting and there is no evidence linking the person to a crime. *Clay*, 640 F.2d at 161.

Here, as in *Clay*, Officer Lukes had nothing more than a mere suspicion that Rembert was involved in any criminality. Defendant Rembert was only visiting the apartment building being searched. The search warrant did not refer to him and Officer Lukes did not have any evidence linking defendant Rembert to any crime before he opened the door. That defendant Rembert said that he had come to see "Black", a suspected drug dealer, is alone insufficient to justify a frisk. That Rembert moved his right arm after the pat-search had already begun cannot be relied upon to justify the frisk.

The government's reliance on *United States v. Flett*, 806 F.2d 823 (8th Cir.1986), and *United States v. Patterson*, 885 F.2d 483 (8th Cir.1989) is misplaced.

In *Flett*, the police entered a trailer home to execute an arrest warrant for the homeowner who was charged with a drug crime, and who had previously been charged in a case involving a gun. Flett was inside the trailer visiting the man the police had come to arrest. The police frisked Flett and found contraband on him. The Eighth Circuit permitted the admission of evidence found on appellant's person during the frisk. The Court distinguished its prior holding in *Clay* because in *Flett*, appellant was already present inside the home when the police arrived to execute the warrant. Consequently, the officer "did not have the opportunity to exclude appellant from the residence and thus avoid contact with him." *Flett*, 806 F.2d at 828. In contrast the *Clay* Court had observed that when appellant came to the door, the police, in order to protect themselves from danger, "could have denied appellant the right to enter the premises while the search was being conducted." *Clay*, 640 F.2d at 162 n. 9. Moreover the Court observed that Flett's physical appearance matched that of other known gang members. This together with his location inside the home of a known gang member, charged with drug offenses, and who had previously been charged in a case involving the use of a firearm, gave the arresting officer the articu-

lable suspicion they needed to justify the frisk of Flett.

In the instant case, as in *Clay*, but unlike in *Flett*, Officer Lukes could have refused to open the door when Rembert knocked. Unlike in *Flett*, where appellant was already at the trailer home, inside of which the officers executed an arrest warrant, Rembert was 15–20 feet down a hallway and outside of a locked security door when the officer encountered him. Lukes still had the opportunity to exclude defendant Rembert from the site of the search. Instead, Officer Lukes chose to create what he now describes as a dangerous situation by inviting defendant Rembert into the search scene.

*Patterson* is also distinguishable on its facts. In *Patterson*, while a search was in progress Patterson drove up in a blue van that had been observed during prior surveillance of the residence being searched, and which was thought to belong to the owner of the residence being searched. Patterson approached the house and was invited inside. In addition the residence had a history of people coming and leaving after a short period of time. While the search was in progress about 15 calls were received at the residence within ½ hour. Once inside, Patterson was frisked and found to be in possession of a gun. *Patterson*, 885 F.2d at 484. The Court distinguished the case from *Clay* by saying that Patterson drove up to a known drug vending site in a blue van thought to be the homeowner's. *Id.* at 485. Further, he was not forced into the house at gunpoint as in *Clay*. *Id.*

In the instant case, unlike in *Patterson*, there was no evidence that defendant Rembert was in any way connected to any illegal conduct at the Sobriety House. He merely said that he was there to visit "Black." Defendant Rembert did not have the connection to the apartments being searched that was present in *Patterson*. While the facts in *Patterson* gave the officers articulable suspicion to believe Patterson was involved in some criminality, here there are no such facts which would justify a frisk of defendant Rembert.

In short there is nothing in the facts here, or in the very fact specific holdings of *Flett* or *Patterson,* which would compel this court to depart from the very clearly controlling holding of *Clay.*

As a result of the invalid search of Defendant Rembert, the gun and drugs found on his person must be suppressed. *Wong Sun v. United States,* 371 U.S. 471, 484–488, 83 S.Ct. 407, 415–418, 9 L.Ed.2d 441 (1963).

### B. *Defendant's statement is admissible.*

■ Defendant Rembert seeks to suppress statements that he made to Special Agent McClelland on August 26, 1993. He argues that these statements are fruits of the illegal pat-search conducted in February.

■ The exclusionary rule requires the suppression of evidence obtained through illegal government conduct unless the evidence has been "purged of its primary taint." *Wong Sun,* 371 U.S. at 484–488, 83 S.Ct. at 415–418. In order for a statement given to police after an unlawful seizure to be admissible at trial, the statement must not only be voluntary by Fifth Amendment standards, but it must also not be the result of exploiting the illegal seizure; rather it must be "an act of free will [sufficient] to purge the primary taint." *Id.* at 486, 83 S.Ct. at 416; *Brown v. Illinois,* 422 U.S. 590, 602, 95 S.Ct. 2254, 2261, 45 L.Ed.2d 416 (1975).

The Supreme Court held that Wong Sun's statement was not fruit of his illegal arrest. *Wong Sun,* 371 U.S. at 491, 83 S.Ct. at 419. Wong Sun had been released after a lawful arraignment, and had returned voluntarily several days later to make the statement. *Id.* The Court found that the connection between the arrest and the statement had become so attenuated as to dissipate the taint. *Id.; Nardone v. United States,* 308 U.S. 338, 341, 60 S.Ct. 266, 267, 84 L.Ed. 307 (1939).

In *Brown,* the Supreme Court set forth three factors for a court to consider in determining whether the causal chain has been broken: 1) the time elapsing between the illegality and the acquisition of evidence; 2) the presence of intervening circumstances, and 3) the purpose and flagrancy of the illegal conduct.

In defendant Rembert's case, the primary taint of the invalid search was purged by intervening circumstances. There was a six month period of time between the illegal search on February 15, 1993 and defendant's statements to Special Agent McClelland the day after his arrest on August 25, 1993.[2] Moreover it appears that following the unlawful search in February, defendant was released, until his August arrest on the instant indictment which was filed May 5, 1993. As in *Wong Sun,* there was intervening freedom from custody to purge the taint from illegal police conduct. Indeed, the instant case presents an even more compelling case, since Rembert was free for six months after the illegal act rather than several days. The statements made by defendant Rembert were not fruits of the illegal search under the factors set forth in *Brown.*

■ Before the government may introduce in its case-in-chief an incriminating statement made by a defendant, it must prove a voluntary, knowing and intelligent waiver of the accused's rights under the Fifth Amendment. *Miranda v. Arizona,* 384 U.S. 436, 475, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694 (1966). In assessing the validity of a waiver, courts analyze the totality of the circumstances surrounding the interrogation. *Moran v. Burbine,* 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986).

Defendant Rembert was properly warned of his rights prior to the commencement of the interview with Special Agent McClelland at the Federal Building in Minneapolis. Special Agent McClelland testified that he read defendant Rembert his *Miranda* rights as listed on Government Exhibit two, and that defendant said he understood each of the rights as they were read to him. There were no threats or promises made to defendant Rembert. Special Agent McClelland ceased the interview when defendant Rembert re-

---

**2.** There is no suggestion that the August arrest was in any way unlawful. It was made pursuant to an arrest warrant issued upon the return of the instant Indictment.

quested an attorney.[3] The undersigned finds that defendant made a voluntary, knowing and intelligent waiver of his *Miranda* rights.

### III. *Recommendation*

Accordingly, based on the files, records and proceedings herein,

**IT IS RECOMMENDED** that:

1. Defendant's motion to suppress evidence found on his person be **GRANTED;**

2. Defendant's motion to suppress statements be **DENIED.**

DATED: October 12, 1993

Pursuant to Local Rule 72.1(c)(2), any party may object to this report and recommendation by filing with the clerk of Court and serving all parties, within ten days after being served with a copy thereof, written objections which specifically identify the portions of the proposed findings, recommendations or report to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this report and recommendation, the party making the objections shall timely order and cause to be filed within 10 days, a complete transcript of the hearing.

---

**3.** Special Agent McClelland testified that defendant Rembert requested to use the phone to call his sister or girlfriend prior to the interview. However, he did not ask to call an attorney at this point.