STATE OF NORTH CAROLINA v. TOMMIE DEION COVINGTON

No. 15A85

(Filed 7 January 1986)

**1. Criminal Law § 90.2— impeachment of own witness—Rules of Evidence—prior law**

   Where a State's witness testified on *voir dire* in response to a question by the court that his identification of defendant was based on his prior photographic identification, the State had the right under G.S. 8C-1, Rule 607 to elicit contradictory testimony that he based his identification on having seen defendant a week before the crimes and at the time of the crimes. Even under the law as it existed prior to the effective date of the Rules of Evidence, the trial court would have acted well within its discretion in permitting the prosecutor's reexamination of the witness where it is apparent that the witness did not fully comprehend the court's question and that the prosecutor's subsequent questioning was merely an attempt to call facts to the witness's attention which would clear up any confusion and enable him to testify correctly as to the basis of his identification of defendant.

**2. Criminal Law § 78— inability to identify assailants—stipulation not violated**

   A stipulation that the female victim would be unable to identify either of her two assailants at trial but would be able to differentiate between the two assailants by referring to them as the "taller" one and the "shorter" one was not violated when the State examined the victim as to whether she had ever seen defendant prior to the night of the offenses or when the victim continually referred to defendant as "the tall one."

State v. Covington

**3. Criminal Law § 162— evidence violating stipulation—absence of objection—no plain error**

Assuming that a witness's reference to a codefendant by name and by description as "the short one" was objectionable as violating a stipulation that the witness was unable to identify her assailants at trial, defendant's failure to object constituted a waiver of objection under App. Rule 10(b)(1), and the testimony did not constitute plain error entitling defendant to a new trial despite his failure to object.

**4. Criminal Law § 66.1— in-court identification—opportunity for observation**

The male victim had sufficient opportunity to observe defendant to permit his in-court identification of defendant where the victim testified that the two persons who intruded into his home had come to his home a week before the incident in question seeking directions to a local business; they were in the victim's presence for approximately fifteen to twenty minutes on that occasion; on the date of the crimes, the two intruders were in his home for approximately two and one-half hours, and defendant was in his presence for thirty to forty-five minutes; and the lighting conditions inside the victim's home were good and he could see defendant's face clearly. Any discrepancies between the victim's *voir dire* testimony and his testimony at trial go to the weight to be accorded his testimony rather than to its admissibility.

**5. Burglary and Unlawful Breakings § 5.8; Larceny § 7.8; Rape § 5; Robbery § 4.3— first degree rape—breaking or entering—larceny—armed robbery—sufficiency of evidence**

The State's evidence was sufficient to support submission to the jury of charges against defendant for first degree rape, armed robbery, felonious breaking or entering and larceny, and larceny of an automobile where it tended to show that two men entered the victims' house after assaulting the male victim; the male victim positively identified defendant as one of the intruders; the men carried large bolts as potential weapons and later displayed a firearm; both of the intruders engaged in vaginal intercourse with the female victim against her will after threatening to kill her unless she cooperated; while the victims were tied up in the bathroom, they could hear the two men ransacking their home; after the intruders left, the victims discovered that several items of personal property and their automobile were missing; shortly after the crimes occurred, a witness saw defendant riding in the victims' automobile; when the occupants of the automobile discovered that they were being followed, they drove away at a high rate of speed; the occupants eventually abandoned the car and fled on foot; before being apprehended, defendant ran from the arresting officer; and defendant's fingerprints were discovered inside the victims' car.

BEFORE *Albright, J.,* at the 3 September 1984 Criminal Session of Superior Court, FORSYTH County, defendant was convicted of first-degree rape, robbery with a dangerous weapon, felonious breaking or entering and larceny, and larceny of an automobile. Defendant was sentenced to the mandatory term of life imprison-

ment for the first-degree rape, forty years for the robbery, six years for the felonious breaking or entering and larceny which were consolidated for judgment, and three years for the larceny of an automobile, all sentences to be served consecutively. Defendant appeals the first-degree rape conviction as a matter of right pursuant to N.C.G.S. § 7A-27(a). On 15 January 1985, this Court allowed defendant's motion to bypass the North Carolina Court of Appeals on his appeal in the armed robbery, breaking or entering and larceny, and larceny of an automobile cases.

*Lacy H. Thornburg, Attorney General, by Walter M. Smith, Assistant Attorney General, for the State.*

*Gail F. Miller for defendant-appellant.*

MEYER, Justice.

The defendant brings forward assignments of error relating to the victims' in-court identification of him as one of the perpetrators of the offenses against them. He also contends that the evidence was insufficient to support the submission of the cases against him to the jury. We find no error.

The State's evidence tended to show that on the afternoon of 27 June 1983, Mr. Thomas Puryear and his wife, Wanda, were at their home in Winston-Salem. Shortly after 6:00 p.m., two men, one of whom Mr. Puryear identified as the defendant, came to the back door seeking directions to the Schlitz Brewery employment office. Puryear testified that the same two men had come to his house the previous week asking directions to the brewery. After conversing for approximately ten minutes, the other man, who was shorter than the defendant, suddenly struck Puryear in the head and threw him to the kitchen floor. The intruders proceeded to remove his glasses and class ring. At that time, Puryear noticed that the intruders were carrying bolts approximately sixteen inches in length, weighing about one pound. When Puryear attempted to warn his wife, the defendant struck him in the throat with the bolt. The two men then demanded that Puryear tell them where he kept his money and firearms. When he told them that he had no money or guns, Puryear was taken into the front bedroom and tied up.

The defendant then left the room while the other intruder stood watch over Puryear. A few minutes later, the defendant

came back to the bedroom and the other intruder left the room. The defendant stayed in the bedroom approximately ten minutes and made a remark to Puryear which tended to indicate that he had engaged in intercourse with Mrs. Puryear.

Mrs. Puryear testified that she was asleep on a couch in the living room when she was awakened by the taller of the two intruders. She saw that he had a large bolt in his hand. The man proceeded to lead Mrs. Puryear to the bathroom where he undressed her and tied her feet. She was then taken to the rear bedroom. At that point, the intruder displayed a pistol which Mrs. Puryear recognized as belonging to her husband. The man placed the gun to her head and threatened to kill her unless she got on the bed. The man proceeded to engage in vaginal intercourse with Mrs. Puryear. He then ransacked the bedroom closets.

The shorter of the two intruders then entered the room and took possession of the gun. He also engaged in vaginal intercourse with the victim. Mrs. Puryear was then taken to the bathroom. Shortly thereafter, Mr. Puryear was brought into the bathroom, and the two men tied the victims together. The intruders then ransacked the house. Approximately an hour later, the victims were blindfolded and had a soft drink poured on them. The two men left shortly thereafter.

Mr. Puryear was soon able to free himself and his wife. He then climbed out the bathroom window and went to a local establishment where the police were notified. A number of items were missing from the Puryears' home, including two television sets, an air conditioner, watches, guns, clothing, and Mrs. Puryear's wedding ring. The Puryears' car, a blue 1966 Dodge Coronet 440, was also missing. Mr. Puryear gave a description of the two intruders to the police upon their arrival.

C. S. Poteat, a licensed private investigator, testified that during the early evening hours of 27 June 1983, he was driving in the vicinity of the Puryears' home when he heard a stolen vehicle report come over his police scanner. The report was for a 1966 blue Dodge Coronet. Approximately five minutes later, Poteat saw the car and began following it. Poteat testified that two men were inside the car, with the defendant being seated on the passenger side. Poteat called the police from his mobile telephone, in-

formed them that he was following the vehicle in question, and requested assistance in stopping the car.

The occupants of the car soon discovered that they were being followed and made gestures to Poteat which he interpreted as warnings or threats. The Coronet then took off at a high rate of speed, ran several stop signs, and made several evasive turns. Police vehicles soon converged on the car, and it eventually stopped behind a local high school. The occupants fled the scene, and police officers gave chase on foot. The car that was abandoned behind the school was the 1966 Dodge automobile which had been stolen from the Puryears' residence.

Officer Bobby Holcombe of the Winston-Salem Police Department testified that while on patrol on the evening of 27 June 1983, he received a radio message concerning the stolen automobile. Holcombe soon spotted a man matching the description of one of the suspects. However, when he pulled up in front of him, the man, whom Officer Holcombe identified as the defendant, ran into the woods. Shortly thereafter, Holcombe saw and apprehended a man matching the description of the other suspect. The man Officer Holcombe apprehended was Calvin Baker.

That night, Mr. Puryear was shown a photographic lineup. He immediately picked out a photograph of Baker as being the photograph of one of the intruders. Two days later, Mr. Puryear was shown another photographic lineup. He picked out a photo of the defendant as being a photograph of the other intruder.

The State also introduced evidence showing that the defendant's fingerprints were found inside the Dodge automobile. Baker's fingerprints were also discovered in the vehicle.

The defendant presented no evidence.

[1] The defendant initially argues that the trial court erred by permitting the prosecution to impeach the testimony of one of its witnesses, Mr. Puryear. The questioning which is the subject of this assignment of error took place at a *voir dire* hearing which was held to determine the admissibility of in-court identification testimony of Mr. Puryear. During the *voir dire*, Puryear testified about the events which occurred on the evening of 27 June, and he related the fact that the two intruders had come to his house a week earlier. Puryear identified the defendant as one of the in-

truders. After the defense had concluded its cross-examination, the following exchange took place:

> COURT: Just a minute. Now, when you pointed out the defendant some moments ago, what did you base that on?

> WITNESS: The photographic identification.

> COURT: All right. Anything else?

> . . . .

> [PROSECUTOR]: Are you picking him out in court because of how you saw him in the photograph or how you saw him that day?

> [DEFENSE COUNSEL]: Objection.

> COURT: Overruled.

> [WITNESS]: Well, seeing in the flesh.

> [PROSECUTOR]: When?

> [WITNESS]: The week previous to the entrance and also at the time of the entrance.

> [PROSECUTOR]: Okay.

> [WITNESS]: That's how I was able to identify the photographs immediately.

The defendant contends that this questioning constituted impermissible impeachment by the prosecution of its own witness. We do not agree. Prior to the adoption of the North Carolina Rules of Evidence, the general rule was that the State was prohibited from impeaching its own witness. *E.g., State v. Oxendine*, 303 N.C. 235, 278 S.E. 2d 200 (1981); *State v. Squire*, 302 N.C. 112, 273 S.E. 2d 688 (1981); *State v. Austin*, 299 N.C. 537, 263 S.E. 2d 574 (1980). However, Rule 607 of the Rules of Evidence provides that a witness may be impeached by any party, including the party who called him. The new rules were in effect at the time of the defendant's trial. Therefore, after Puryear testified that his identification of the defendant was based on his prior photographic identification, the State had the right under Rule 607 to elicit contradictory testimony.

Furthermore, we note that even under the old impeachment rule, this evidence would have been admissible. Under the old rule, it was well settled that the trial court could, in its discretion, permit a party to cross-examine its own witness who surprises him by his testimony, for the purpose of refreshing the witness' recollection so that he could testify correctly. *State v. Tilley*, 239 N.C. 245, 79 S.E. 2d 473 (1954); *State v. Grainger*, 19 N.C. App. 181, 198 S.E. 2d 189 (1973). Here, it is quite apparent that Puryear failed to fully comprehend the judge's question. The prosecutor's subsequent questioning was merely an attempt to call facts to the witness' attention which would clear up any confusion and enable him to correctly testify as to the basis of his identification of the defendant as one of the perpetrators of these offenses. Therefore, even under the law as it existed prior to the effective date of the Rules of Evidence, the trial court would have been acting well within its discretion in permitting the prosecution to reexamine Puryear. This assignment of error is overruled.

[2] The defendant next argues that the trial court erred by allowing Mrs. Puryear to give identification testimony after the State had stipulated that she would be unable to make any identification at trial. After Mr. Puryear's *voir dire* testimony, the prosecutor made the following statement to the court:

> State would stipulate as to Mrs. Puryear. She was also shown State's Voir Dire Exhibit Number 1 and Number 2 [the two photographic lineups]. State will stipulate that her identification as to Covington, she simply could not pick out Mr. Covington's photograph, so I will not have her identify any one, Mr. Baker or Mr. Covington, in the courtroom.

> She will be able to say the taller and shorter of the two. She will be able to identify them that way.

The defendant contends that, at several points in her testimony, Mrs. Puryear identified him as one of the intruders and thus violated this stipulation. We find this argument to be without merit.

The defendant first argues that his identification was improperly implied when the State examined Mrs. Puryear as to whether she had ever seen him prior to the night of the offenses, implying that he was indeed present at the house that night. We fail to see how this testimony could be interpreted as identifying

the defendant as one of the intruders. The defendant also argues that the stipulation was violated when Mrs. Puryear continually referred to him as "the tall one." Initially, we note that, although the defendant did enter one objection to a reference by Mrs. Puryear to "the tall one," the defendant failed to object to her subsequent references to "the tall one." Where evidence is admitted without objection, the benefit of a prior objection to the same evidence is lost and the defendant is deemed to have waived his right to assign as error the prior admission of the evidence. *State v. Wilson*, 313 N.C. 516, 330 S.E. 2d 450 (1985); *State v. Maccia*, 311 N.C. 222, 316 S.E. 2d 241 (1984). Furthermore, in the stipulation, the prosecutor stated that Mrs. Puryear would be able to differentiate between the two intruders by referring to them as the "taller" one and the "shorter" one. Mrs. Puryear's references to "the tall one" were therefore clearly admissible.

[3] The defendant also contends that Mrs. Puryear improperly referred to his codefendant, Baker, by name and specifically stated that Baker was "the short one." The implication, defendant argues, was that the other intruder was "the tall one," and defendant, being obviously taller, was the other intruder. The defendant failed to object to this testimony, and the objection is deemed waived under Rule 10(b)(1) of the Rules of Appellate Procedure. However, in *State v. Black*, 308 N.C. 736, 303 S.E. 2d 804 (1983), we held that the "plain error" rule adopted in *State v. Odom*, 307 N.C. 655, 300 S.E. 2d 375 (1983), regarding error in the jury instructions would be equally applicable to the erroneous admission of evidence. Assuming, *arguendo*, that this testimony was objectionable, it is clear that its admission did not constitute "plain error." Mrs. Puryear did not at any time identify the defendant by name or otherwise as one of the intruders. The single reference to the codefendant, Baker, by name and by description as "the short one" could not have "had a probable impact on the jury's finding of guilt." *Id.* at 661, 300 S.E. 2d at 379.

[4] The defendant next contends that Mr. Puryear's identification testimony should have been suppressed due to inconsistencies between his *voir dire* testimony and his testimony at trial concerning the identity of the two intruders. He goes on to argue that since Mr. Puryear's identification testimony was the only evidence linking him to the crime scene, the trial court should have granted his motions to dismiss the charges against him and

to set aside the verdicts as being against the greater weight of the evidence. We do not agree.

It is well settled that, as a general rule, the jury determines the credibility of witnesses and the weight to be accorded their identification testimony. *E.g., State v. Turner,* 305 N.C. 356, 289 S.E. 2d 368 (1982); *State v. Green,* 296 N.C. 183, 250 S.E. 2d 197 (1978). This rule is inapplicable, however, "where the only evidence identifying the defendant as the perpetrator of the offense is inherently incredible because of undisputed facts, clearly established by the State's evidence, as to the physical conditions under which the alleged observation occurred." *State v. Miller,* 270 N.C. 726, 731, 154 S.E. 2d 902, 905 (1967). However, "where there is a reasonable possibility of observation sufficient to permit subsequent identification, the credibility of the witness' identification of the defendant is for the jury." *Id.* at 732, 154 S.E. 2d at 906.

With these principles in mind, we conclude that the trial court did not err in admitting Mr. Puryear's identification testimony. During the *voir dire,* Puryear testified that the intruders had come to his house a week before the incident seeking directions to a local business. They were in Puryear's presence for approximately fifteen to twenty minutes on that occasion. Mr. Puryear further testified that on 27 June, the two men were in his home for approximately two and one-half hours, and the defendant was in his presence for thirty to forty-five minutes. He stated that the lighting conditions inside the house were good and that he could see the defendant's face clearly. This evidence establishes that Puryear had sufficient opportunity to observe the defendant to permit him to subsequently identify the defendant as one of the intruders. It was therefore up to the jury to determine the credibility of, and the weight to be accorded to, his testimony. Any discrepancies between Puryear's *voir dire* testimony and his testimony at trial go to the weight to be accorded his testimony, not its admissibility. *See State v. Wilson,* 293 N.C. 47, 235 S.E. 2d 219 (1977). The defendant had the opportunity to cross-examine the witness as to any inconsistencies between his *voir dire* testimony and his testimony at trial, and it was up to the jury to resolve any discrepancies which may have arisen. Furthermore, Puryear's identification testimony was not "the only evidence identifying the defendant as the perpetrator of the of-

fense." Shortly after the crimes occurred, Mr. Poteat saw the defendant riding in the car that was stolen from the Puryears. The defendant's fingerprints were also found in the vehicle.

For the above-stated reasons, we hold that the trial court did not err in admitting Mr. Puryear's identification testimony.

[5] Finally, we turn to the question of whether the trial court erred in denying the defendant's motion to dismiss the charges against him and his motion to set aside the verdicts as being against the greater weight of the evidence. Prior to submitting the issue of a defendant's guilt to the jury, the trial court must be satisfied that substantial evidence has been introduced tending to prove each essential element of the offense charged and that the defendant was the perpetrator. *State v. Hamlet*, 312 N.C. 162, 321 S.E. 2d 837 (1984); *State v. Powell*, 299 N.C. 95, 261 S.E. 2d 114 (1980). In considering a motion to dismiss, the trial court must consider the evidence in the light most favorable to the State, and the State is entitled to every reasonable intendment and inference to be drawn therefrom. *State v. Bright*, 301 N.C. 243, 271 S.E. 2d 368 (1980).

In the present case, the State introduced evidence that two men entered the Puryears' house after assaulting Mr. Puryear. Mr. Puryear positively identified the defendant as one of the intruders. The men carried large bolts as potential weapons. They later displayed a firearm. Mrs. Puryear testified that both of the intruders engaged in vaginal intercourse with her against her will after threatening to kill her unless she cooperated. While the Puryears were tied up in the bathroom, they could hear the two men ransacking their home. After the intruders had left, the Puryears discovered that several items of personal property were missing. Their automobile was also missing. Shortly after the crimes occurred, Mr. Poteat saw the defendant riding in the Puryears' automobile. When the occupants discovered that they were being followed, they attempted to flee at a high rate of speed. They eventually abandoned the car and fled on foot. Before eventually being apprehended, the defendant ran from Officer Holcombe. His fingerprints were discovered inside the Puryears' car. We find that this evidence was clearly sufficient to support the submission of the cases against the defendant to the jury. Therefore, the trial court did not err in denying the defendant's motion to dismiss the charges against him.

We also conclude that the trial court did not err in denying the defendant's motion to set aside the verdicts as being against the greater weight of the evidence. The decision whether to grant or deny a motion to set aside the verdict is vested in the discretion of the trial judge and is not reviewable absent a showing of an abuse of discretion. *State v. McKenna*, 289 N.C. 668, 224 S.E. 2d 537, *modified*, 429 U.S. 912, 50 L.Ed. 2d 278 (1976). A trial court may be reversed for an abuse of discretion only upon a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision. *State v. Hayes*, 314 N.C. 460, 334 S.E. 2d 741 (1985). In light of the overwhelming evidence against the defendant, the trial court did not abuse its discretion in refusing to set aside the jury's verdicts.

The defendant received a fair trial, free from prejudicial error.

No error.