**UNITED STATES of America, Appellee,**

v.

**Calvin L. FLETT, Appellant.**

**No. 86–5121.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 14, 1986.

Decided Dec. 8, 1986.

William L. Thomas, Lake City, Minn., for appellant.

John M. Lee, Asst. U.S. Atty., Minneapolis, Minn., for appellee.

Before McMILLIAN, Circuit Judge, HENLEY, Senior Circuit Judge, and NICHOL,[*] Senior District Judge.

NICHOL, Senior District Judge.

Appellant Calvin L. Flett pled guilty to a two-count indictment charging a violation of 18 U.S.C. App. section 1202(a)(1), possession of a firearm after having been convicted of a felony, and a violation of 18 U.S.C. section 922(g)(1), transportation of a firearm in interstate commerce after having been convicted of a felony. The plea was entered after the district court[1] denied the appellant's motion to suppress and to dismiss the charges.[2] The appellant's guilty plea was a conditional plea entered pursuant to Fed.R.Crim.P. 11(a)(2),[3] thus reserving the right of the appellant to appeal the adverse determination of the pretrial suppression motion. The appellant now asserts that the district court erred in denying his motion to suppress the evidence seized during a pat-down search of the appellant. We affirm.

## I. BACKGROUND

This case involves the events surrounding the execution of an arrest warrant that had been issued for a man by the name of Steven Jacobson. Jacobson had been under investigation by the Minnesota Bureau of Criminal Apprehension (BCA) for possible narcotic violations. After the arrest warrant had been issued, three law enforcement officers, one BCA agent and two members of the local sheriff's department, were assigned the execution of the warrant. The officers met prior to the execution of this warrant to discuss the procedure that was to be followed. During this meeting, the officers shared information among themselves concerning Jacobson and his involvement with a motorcycle gang calling themselves the Sons of Silence. The gang is a national organization and Jacobson was known as the "enforcer" of the local chapter. The two local officers, Deputy Adams and Deputy Holton, were personally acquainted with Jacobson, who owned a local bar where gang members often gathered. These officers were also familiar with the local chapter of the Sons of Silence and although personally unaware of any felonious behavior on the part of the members of the local chapter, had learned that in general the members of the Sons of Silence had access to and had used weapons in the past. Gang members were also known to have been charged with

---

[*] The Honorable Fred J. Nichol, Senior United States District Judge, District of South Dakota, sitting by designation.

1. The Honorable Paul A. Magnuson, United States District Judge, District of Minnesota.

2. A hearing on the motion to suppress was held before the Honorable Floyd E. Boline, United States Magistrate, District of Minnesota, who issued a report and recommendation complete with findings of fact and conclusions of law. Portions of this report and recommendation were objected to by the appellant; however, the district court, after conducting a de novo review of these portions, accepted the magistrate's report and recommendation and denied the appellant's motion.

3. Fed.R.Crim.P. 11(a)(2) provides: *Conditional pleas.* With the approval of the court and the consent of the government, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing, on appeal from the judgment, to review of the adverse determination of any specific pretrial motion. If the defendant prevails on appeal, he shall be allowed to withdraw his plea.

assault and resisting arrest in the past. Specific to the local chapter, Jacobson had been charged with the use of a firearm (shot a neighbor's dog) and one gang member, Mr. Robert Mann, was currently under investigation for a homicide committed in another state. There is some confusion as to the exact source of this information among the officers. Some of the information was provided by the BCA and some had been gathered from police seminars. The officers did not establish the sources before acting on the information. Prior to leaving to execute the warrant, the officers determined that all males present at the arrest scene were to be subjected to a cursory pat-down search.[4]

The officers proceeded to the Jacobson home, a trailer home, arriving there shortly after 8:00 a.m. Outside the trailer, the officers observed Jacobson's truck, a motorcycle, and an unfamiliar truck with Iowa license plates. As planned, Deputy Holton approached the door with the arrest warrant, BCA agent Comer went to the rear of the trailer and Deputy Adams stood some 15 feet behind Deputy Holton, armed with the squad shotgun. The officers could hear noises from within the trailer. After the second knock, Jacobson answered the door and was told by Deputy Holton that a warrant for his arrest had been issued. There is conflicting testimony on whether Jacobson offered to come outside to discuss the warrant or whether the officers demanded to be let in the residence, but Jacobson did allow Deputy Holton into his trailer home. There was no force used by the officers; Jacobson was not touched in any way and did not object to the entrance of the officers.

The appellant and his wife had arrived at the Jacobson home approximately 15 minutes before the officers. The appellant and his wife were friends of Jacobson and were there to visit and to look at antiques. The appellant, his wife, another woman and two small children were seated in the living room area of the trailer when the officers entered. Deputy Holton stayed with Jacobson and went into the dining room area while Deputy Adams entered and remained near the door. The appellant was seated with his back to the door although he did turn to look at Deputy Adams when he entered the trailer. Almost immediately upon entry Deputy Adams asked the appellant to stand and a pat-down search of the appellant was conducted by Deputy Adams.

Deputy Adams was not personally acquainted with the appellant. He testified that the appellant, from what he could observe, was not involved in any criminal activity. The appellant did not do anything unusual to arouse the suspicion of the officer. The appellant was dressed in similar attire to that of Jacobson, blue jeans and a T-shirt. The officer also testified that the appellant had long hair and a long beard which was again similar to that of Jacobson and other members of the Sons of Silence.

In conducting the search, the officer first felt a hard object in the appellant's right front pants pocket and a buck knife with a four-inch blade was removed. The appellant was then told to stand with his hands against the wall and the pat-down was continued. Another hard object was felt in the appellant's rear pocket from which the officer removed a derringer pistol containing live ammunition.

The appellant's first contention is that the law enforcement officers involved in this incident illegally entered the Jacobson trailer and thus any evidence seized while there was in violation of his Fourth Amendment rights. Secondly, the appellant asserts that the pat-down search conducted by Deputy Adams was not based on probable cause and was not justified at its inception and thus was in violation of his Fourth Amendment rights.

## II. DISCUSSION

In the context of a motion to suppress, the general rule of this circuit is that the

4. In fact, it was the policy of the sheriff's department to search all males present at an arrest scene such as this.

district court's determination will be affirmed unless it is clearly erroneous. *United States v. Sadosky*, 732 F.2d 1388, 1391 (8th Cir.), *cert. denied*, 469 U.S. 884, 105 S.Ct. 254, 83 L.Ed.2d 191 (1984); *United States v. McGlynn*, 671 F.2d 1140, 1143 (8th Cir.1982). Under this standard of review, a finding is clearly erroneous when the reviewing court, on the entire record, is left with the definite and firm conviction that a mistake has been committed. *Anderson v. City of Beesmer City*, 470 U.S. 564, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985), citing *United States v. United States Gypsum Co.*, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948). With this standard in mind, each of the appellant's contentions shall be examined.

A.  Consent of Entry

■ A search that is conducted pursuant to a valid consent is constitutionally permissible. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854 (1973). The validity and voluntary nature of the consent is to be determined from the totality of the circumstances. *Id.* at 227, 249, 93 S.Ct. at 2047–48, 2059.[5]

■ There is conflicting testimony as to whether Jacobson offered to come outside to discuss the warrant or whether or not he agreed to allow the officers to enter his home. Even with this conflict, it is clear that there is sufficient evidence in the record to support the district court's factual determination that Jacobson consented to the entry. No physical force was applied to Jacobson prior to entry or during entry; in fact, Jacobson was not even touched. Jacobson himself testified that he did not refuse entry into his home. The district court's finding that the entry was voluntary and lawful is not clearly erroneous.[6]

B.  Pat-down Search of the Appellant

The appellant's second contention is that the pat-down search conducted by Deputy Adams was in violation of his Fourth Amendment rights. He claims that the officer did not have probable cause nor did the officer base his suspicion of the appellant on any objective facts from which one could reasonably conclude that the appellant was involved in any criminal activity. The government's assertion is that the search was a valid protective search under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

The government is correct in that, if this search is to be upheld, it must comply with the standards established by the Supreme Court in *Terry v. Ohio*. In *Terry*, the Court stated that:

in determining whether the seizure and search were "unreasonable" our inquiry is a dual one—whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place.

*Id.* at 19, 88 S.Ct. at 1879.

The Court further noted that in order to justify the intrusion, "the police officer must be able to point to specific and articulable facts, which taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21, 88 S.Ct. at 1880. Due to the unique nature of this type of search, each case is to be decided on its own facts. *Id.* at 30, 88 S.Ct. at 1884–85.

■ The Supreme Court has never directly addressed the applicability of the *Terry* exception to a search of the companion of an arrestee. In *Ybarra v. Illinois*, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), the Court refused to uphold the search of patron of a bar who happened to be present when the police arrived to con-

---

5. The question of the voluntary nature of a consent is a question of fact again subjecting this court to the clearly erroneous standard of review. *United States v. Allison*, 619 F.2d 1254, 1262 (8th Cir.1980).

6. Since we have found that the entry was consensual, the question of the appellant's standing to challenge the constitutionality of search need not be addressed.

duct a search of the bar pursuant to a valid search warrant. The Court noted that a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to *probable cause* to search that person. *Id.* at 91, 100 S.Ct. at 342 (emphasis added). The Court also refused to find that the search of the person was permissible as a protective search under *Terry.* The state was unable to articulate any specific facts that would justify the police officer at the scene suspecting that the patron was armed and dangerous. *Id.* at 93, 100 S.Ct. at 343. Lastly, the Court in *Ybarra* noted that:

> [T]he "narrow scope" of the *Terry* exception does not permit a frisk for weapons on less than reasonable belief or suspicion directed at the person to be frisked, even though that person happens to be on the premises where an authorized narcotics search is taking place.

*Id.* at 94, 100 S.Ct. at 343.

Several circuits have addressed the question of a limited search of the companion of an arrestee. These circuits have upheld such a search finding that:

> [A]ll companions of the arrestee within the immediate vicinity, capable of accomplishing a harmful assault on the officer, are constitutionally subjected to the cursory "pat-down" reasonably necessary to give assurance that they are unarmed.

*United States v. Berryhill,* 445 F.2d 1189, 1193 (9th Cir.1971). *See also, United States v. Poms,* 484 F.2d 919, 922 (4th Cir.1973) (per curiam); *United States v. Simmons,* 567 F.2d 314 (7th Cir.1977).[7]

The Sixth Circuit has explicitly rejected this "automatic companion" rule in *United States v. Bell,* 762 F.2d 495, 498 (6th Cir. 1985). The court in *Bell* found that the "automatic companion" rule extended the *Terry* requirement of a reasonable suspicion too far. *Id.* at 499. This rule allows

officers the freedom to conduct a cursory pat-down search regardless of the individual circumstances presented in each case. This appears to be in direct opposition to the Supreme Court's directions in both *Terry* and *Ybarra* that the officers articulate specific facts justifying the suspicion that an individual is armed and dangerous. We decline to adopt the "automatic companion" rule.

■ Rather than adopt the "automatic companion" rule, the court in *Bell* examined the totality of the circumstances in an effort to determine whether the pat-down search of the companion of an arrestee was reasonable. *United States v. Bell,* 762 F.2d at 499. Following closely the dictates of *Terry,* the court looked to the specific articulable facts that were known to the officer at the time of the search as well as the reasonable inferences which could be drawn therefrom. *Id.* at 499, 502. Although the fact of companionship alone could not justify a frisk, the court noted that this fact certainly was one to be considered in determining the overall reasonableness of the officer's actions. *Id.* at 500–01.

■ Applying this totality of the circumstances analysis to the facts before us,[8] the record supports the finding that the actions taken by Deputy Adams fall within the guidelines established in *Terry.* First, the officer knew that an arrest warrant had been issued for Jacobson following an investigation by the BCA. The charges involved narcotic violations. The officer had been involved in law enforcement for eighteen years and testified that situations involving narcotics are treated differently. This court must give due weight to the inferences that can be drawn from the officer's general experience. *Terry v. Ohio,*

---

7. This court did cite to *United States v. Berryhill* in *United States v. Clark,* 754 F.2d 789 (8th Cir.1985). The court in *Clark* upheld the search of a companion in an automobile based on a finding of probable cause. The reference to the *Berryhill* decision was not related to the holding of the *Clark* case and does not represent this court's adoption of the *Berryhill* "automatic companion" rule.

8. The magistrate did in fact apply this same totality of the circumstances test in his report and recommendation.

392 U.S. at 27, 88 S.Ct. at 1883; *United States v. Bell,* 762 F.2d at 500.

Second, the officer knew that the subject of the arrest warrant was a known member of a national motorcycle gang which had violent propensities, including charges of using firearms, assault and resisting arrest. In fact, Jacobson was known as the "enforcer" of the local chapter of this gang. Jacobson also had a previous charge filed against him involving the use of a firearm.

■ Third, the officer, upon arriving at the Jacobson residence, was confronted with an unfamiliar automobile with out-of-state license plates. Upon entering the residence, the officer saw the appellant who was dressed in attire similar to that of gang members and whose physical appearance matched that of known gang members (based on the officer's own personal experience). Again, the factor of similarity of appearance taken alone could not justify a stop and frisk and should be viewed with caution. *United States v. Bell,* 762 F.2d at 501. However, the factor of similarity of appearance and attire taken together with the location of the appellant in the home of a known gang member charged with a narcotic violation support a reasonable inference that the appellant may be a gang member and may be armed and dangerous. The fact that the appellant made no threatening moves toward the officer or that the officer did not notice any bulge does not lessen the reasonableness of the officer's actions. The focus of the judicial inquiry is not whether the officer had an indication that the person armed was dangerous, but rather, whether the officer reasonably perceived the subject of the frisk as potentially dangerous. *United States v. Tharpe,* 536 F.2d 1098, 1100–01 (5th Cir.1976) (upholding the search of the automobile companions following the arrest of the driver. The court held that "where there was a good reason for the officer to apprehend that he was in a position of danger from the companions of an arrestee, that officer's pat-down search is compatible with

*Terry*"). The issue is "whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry v. Ohio,* 392 U.S. at 27, 88 S.Ct. at 1883.

This court is not unmindful of its decision in *United States v. Clay,* 640 F.2d 157 (8th Cir.1981). Although not articulated as such, the court in *Clay* also applied a totality of the circumstances analysis before it arrived at the conclusion that the pat-down search in *Clay* was not justified. In *Clay,* the defendant arrived at the door of a residence that was being searched pursuant to a valid search warrant. The police officer who confronted the defendant at the door immediately asked the defendant to enter and upon entry subjected the defendant to a pat-down search. *Id.* at 158. This court noted that in order to justify the search, two inquiries had to be made:

> whether the officer was rightfully in the presence of the party frisked so as to be endangered if that person was armed, and whether the officer had a sufficient degree of suspicion that the party to be frisked was armed and dangerous. (citations omitted).

*Id.* at 159. In *Clay,* the answers to these inquiries demonstrated that the search of the defendant was in fact unreasonable. Not so in the case at bar. Here Deputy Adams did not have the opportunity to exclude the appellant from the residence and thus avoid contact with him. Rather, the appellant was already present in the trailer and the officer had no choice but to be confronted with the appellant. Although the officers were present on the premises for the execution of an arrest warrant only, this court has already established that the entry into the home was consensual and thus the officer was rightfully in the presence of the appellant. In addition, all of the factors discussed above support the district court's determination that the officer had a sufficient degree of suspicion that the appellant was armed and

dangerous.[9]  Thus, by answering the *Clay* inquiries under the facts of this case, the search was justified.

The officers articulated specific facts which along with the reasonable inferences drawn therefrom and the officer's personal experience, support the district court's findings.  Having found that the district court's findings are supported by the record, this court is not left with a definite and firm conviction that a mistake has been made and the order denying the motion to suppress is hereby affirmed.

---

9.  It should be noted that this court in no way condones the policy of the sheriff's officer which provides that all males present at arrests such as these are to be subjected to a cursory pat-down search.  However, the evidence in this case demonstrates an informed decision to search made on the basis of the information known to the officers as well as the experience of the officer involved.