UNITED STATES of America

v.

**Larry G. MEADOWS, Andrew K. Peay and Leonard Meadows, Defendants.**

**Crim. No. 94–0465 (JHG).**

United States District Court, District of Columbia.

March 23, 1995.

James Robert Holloway, Federal Public Defender for D.C., Cheryl Denise Stein, Washington, DC, for defendant Larry G. Meadows.

Sol Zalel Rosen, Washington, DC, for defendant Andrew K. Peay.

James Wilson Richmond, Jr., Washington, DC, for defendant Leonard Meadows.

Jennifer Mary Anderson, Frederick Walton Yette, U.S. Attys., Washington, DC, for U.S.

## ORDER

JOYCE HENS GREEN, District Judge.

On February 22, 1995, this Court issued a Memorandum Opinion and Order ("Opinion"), 878 F.Supp. 234, granting the motions to dismiss filed by all three defendants in this action. The Court ruled that the police unlawfully seized defendant Larry Meadows and that this unlawful seizure tainted all of the evidence seized from defendants Andrew Peay and Leonard Meadows and from Room 102 at the Master Hosts Inn ("Inn").[1] The government now asks the Court to reconsider its ruling with regard to Andrew Peay and Leonard Meadows. It asserts that the police did not violate these two defendants' Fourth Amendment rights. The Court agrees, in part.

The search of Peay's person is based upon the "automatic companion" frisk rule, which permits the search of "all companions of the arrestee within the immediate vicinity, capable of accomplishing a harmful assault on the officer". *United States v. Berryhill*, 445 F.2d 1189, 1193 (9th Cir.1971). It has been adopted in some jurisdictions, *see id.; United States v. Simmons*, 567 F.2d 314 (7th Cir. 1977); *United States v. Poms*, 484 F.2d 919, 922 (4th Cir.1973) (per curiam), and rejected in others, *see United States v. Flett*, 806 F.2d 823, 827 (8th Cir.1986); *United States v. Bell*, 762 F.2d 495, 498 (6th Cir.1985).[2] The courts rejecting the "automatic companion" frisk rule have considered the fact that a weapon was found on a companion to be but one factor in determining the reasonableness of a frisk. *Flett*, 806 F.2d at 827.

Our court of appeals has never applied the "automatic companion" frisk rule. In *United States v. McKie*, 951 F.2d 399 (D.C.Cir.1991), the court recognized the split of authority on the "automatic companion" frisk rule, but determined that it was unnecessary to address the issue on the facts before it. *Id.* at 401–02. Later, in *United States v. Simpson*, 992 F.2d 1224 (D.C.Cir.1993), the court upheld the frisk of a man (Simpson) suspected of rape after the police uncovered a weapon on a second suspect at the scene where Simpson was being questioned. In this case, however, Simpson matched the description of one of the two alleged rapists and the second suspect matched the description of the other. The court upheld the frisk of Simpson because the officer "knew the circumstances of the alleged rape" (i.e. that there were two alleged rapists and that Simpson matched the description of one) and therefore "reasonably assumed that Simpson was associated with the man whom he [the officer] had just subdued and that Simpson might also be armed." *Id.* at 1227. The court made no mention of the "automatic companion" frisk rule. Indeed, it was unnecessary for it to do so on such facts.

■ The instant case is very different. The police were on the lookout for a lone armed robber and incorrectly and unreasonably believed that Peay's companion matched the robber's description. The police unlawfully seized Peay's companion and recovered a gun during the ensuing frisk. The government asks this Court to adopt and apply the "automatic companion" frisk rule on these facts.

■ The Court will decline this invitation. It is undoubtedly a close question whether the "automatic companion" frisk rule comports with the strictures of Fourth Amendment jurisprudence in the "usual" case in which a weapon is lawfully seized from one defendant prompting the frisk of the companions. Nonetheless, it cannot apply where the predicate frisk that prompts and pur-

---

1. The factual background of this case was set forth in the Court's February 22, 1995 Memorandum Opinion and Order. It will not be repeated but is adopted as if set forth fully herein.

2. This rule has also been adopted in the District of Columbia local court. *See Mayes v. United States*, 653 A.2d 856 (D.C.1995). The District of Columbia court adopted the reasoning of *Berryhill*, 653 A.2d at 859–60.

ports to justify the frisk of the companion was, itself, unlawful. To hold otherwise would condone an unacceptable result. Imagine a group of ten people standing on a street corner. The instincts of the police indicate that these people are involved in drugs or possess illegal firearms. These beliefs, however, do not rise to the level of reasonable articulable suspicion as to any member of the group or to the group as a whole. If the Court were to adopt the rule urged by the government, the police could approach this group and begin to frisk each of them one by one. If the police did not find a weapon on the first person frisked, that person would be let go. If the police did not find a weapon on the second person frisked, that person would be let go. If the police found a weapon on the third person frisked, that person would have to be let go because there was no reasonable articulable suspicion to conduct the frisk in the first place. The police, however, would then have a license to frisk the remaining members of the group and arrest any of them were evidence uncovered in these frisks. Simply stated, the result urged by the government here would permit the police to piggyback onto an unlawful frisk to create the foundation for subsequent, lawful frisks. The Fourth Amendment demands more.[3]

Where, as here, the frisk of the original defendant is unlawful and the police have no independent reasonable articulable suspicion to justify the frisk of the companion[4], the "automatic companion" frisk rule clearly punishes a person "based upon nothing more than his unfortunate choice of associates", in violation of the Fourth Amendment. *Bell,*

762 F.2d at 499. Accordingly, the United States' motion to reconsider will be denied with regard to the weapon and drugs found on Andrew Peay's person and the statements that he made to police.

■ The evidence found on Leonard Meadows presents a different question. Leonard Meadows was frisked because he was the companion of Larry Meadows, from whom the police had recovered a gun. Although for the reasons noted above the Court finds that this frisk was unlawful, it did not produce any evidence. Leonard Meadows was then escorted 10–15 feet away from the scene. He was no longer seized, but was free to leave.[5] For reasons known only to him, however, he left his duffel bag at the scene as he walked away.

Thereafter, the manager of the Inn noticed a telephone that had been stolen from the Inn in Leonard Meadows' duffel bag. The telephone was in plain view.[6] Leonard Meadows was then arrested for theft of the telephone and the search incident to this arrest uncovered drugs on Leonard Meadows' person. This search, incident to a lawful arrest, was in no way tainted by the earlier unlawful frisk. The chain of events leading to that frisk was broken at the point when Leonard Meadows was no longer seized. Accordingly, the United States' motion to reconsider will be granted with regard to evidence obtained from the search of Leonard Meadows' person.

■ Finally, the police uncovered a key to Room 102 at the Inn on Larry Meadows' person during the search incident to his unlawful arrest. The drugs and weapons found

---

3. The government's proposed rule could lead to a circular result. The police could attempt to justify a frisk of the original person who was unlawfully frisked because the original person frisked was the companion of the second person from whom a weapon had been recovered and it was inevitable that the weapon would have been recovered from the original person frisked because of the "automatic companion" frisk rule.

4. For example, Peay was not wearing "a bulletproof vest with a gun-like bulge underneath" as was the companion in *United States v. Whitfield,* 907 F.2d 798, 799–800 (8th Cir.1990).

5. The Court credits the testimony of Officer Robinson on this point. Although Leonard Meadows

did not believe he was free to leave, the Court finds that a reasonable person in Leonard Meadows' position would have concluded that he was free to leave the officers' presence after the completion of a frisk that did not produce any evidence. *United States v. Brady,* 842 F.2d 1313, 1314 (D.C.Cir.1988); *see* Opinion at 837–38. The officer that was standing with Leonard Meadows was merely keeping Leonard Meadows from retrieving the two guns that were placed on top of the car, he was not preventing Leonard Meadows from leaving the area.

6. *See* Opinion at 236 n. 3 (noting that Leonard Meadows' testimony did not contradict the officer's testimony that the telephone was in plain view).

**4**

in that room are inadmissible against Larry Meadows pursuant to the fruit of the poisonous tree doctrine. Nonetheless, Peay and Leonard Meadows lack standing to challenge the unlawful recovery of the key. *See Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *United States v. Caicedo–Llanos*, 960 F.2d 158, 160–62 (D.C.Cir. 1992). The drugs and weapons found in Room 102, therefore, are admissible against them. Accordingly, the motion to reconsider will be granted with regard to the evidence recovered in Room 102 at the Inn.

For the reasons noted above, it is hereby

ORDERED that the Government's Motion to Reconsider Memorandum and Order Granting Motions to Suppress is granted in part and denied in part. The Memorandum Opinion and Order filed on February 22, 1995 is vacated in part as follows: Andrew Peay's motion to suppress is denied insofar as it challenges any evidence recovered from Room 102 at the Inn. Leonard Meadows' motion to suppress is denied in total.

IT IS SO ORDERED.