STATE OF NORTH CAROLINA v. JAMES WESLEY HUEY, DEFENDANT

No. COA09-496

(Filed 15 June 2010)

**Search and Seizure— investigatory stop—no reasonable suspicion—motion to suppress improperly denied**

> The trial court in a possession of heroin case erred in denying defendant's motion to suppress evidence discovered as a result of a police officer's search of defendant. The officer lacked reasonable suspicion to effectuate an investigatory stop of defendant where the officer knew that the suspects were described as being approximately 18 years old, while defendant was 51 years old at the time of the stop.

Appeal by defendant from judgment entered 6 January 2009 by Judge J. Gentry Caudill in Mecklenburg County Superior Court. Heard in the Court of Appeals 14 October 2009.

*Attorney General Roy Cooper, by Assistant Attorney General John G. Barnwell, for the State.*

*Appellate Defender Staples S. Hughes, by Assistant Appellate Defender Andrew DeSimone, for defendant-appellant.*

GEER, Judge.

Defendant James Wesley Huey appeals from his conviction of felony possession of heroin, contending the trial court erred in denying his motion to suppress evidence gained as a result of an allegedly illegal search and seizure. Because (1) the State was bound by its stipulation that the police officer who stopped defendant knew that the suspects he was looking for were approximately 18 years of age, and (2) defendant was 51 years of age as indicated on his identification card, we agree with defendant that the trial court's findings of fact are insufficient to support its conclusion that the officer had reasonable suspicion to stop and detain defendant. We, therefore, reverse the trial court's denial of defendant's motion to suppress.

## Facts

On 14 April 2008, defendant was charged with felony possession of heroin. On 16 September 2008, defendant filed a motion to suppress any evidence seized as a result of a stop on 13 October 2007 by an officer with the Charlotte Mecklenburg Police Department. At the hearing on the motion to suppress, the State first stipulated to several facts.

The State stipulated that on 13 October 2007, defendant was riding on a Charlotte Area Transit System ("CATS") bus when the bus was boarded by police officers who asked if anyone had gotten on or off the bus recently. The bus driver told the officers that no one had recently boarded or departed the bus. Defendant subsequently got off the bus and came into contact with Officer Sean Moon, who "was investigating or looking for possible robbery suspects." The State further stipulated that "the description that Officer Moon had to go on was there were two suspects; both suspects were black males, around the age of eighteen, and he had a clothing description for each one."

Officer Moon then took the stand and testified that at 9:22 p.m. on 13 October 2007, he was patrolling the area surrounding Northlake Mall in Charlotte when he received a call for service. The call reported that a person had been robbed in the parking lot of the Belk

store. According to Officer Moon, the call described the suspects as two black males, one of whom was wearing "a light colored hoodie, bluejeans, and some type of writing on it." The other suspect was described as wearing "another hoodie that was darker."

As Officer Moon was patrolling the mall, he noticed defendant walking on the mall property roughly a quarter mile away from the Belk store. Officer Moon testified that defendant's "clothing drew [his] attention as well as his race and gender." Moon also testified that the parking lot was lit with "fairly dim lights." Defendant was wearing "a light colored hoodie" that "was actually almost a cream or yellow hooded sweatshirt, [and] bluejeans." The sweatshirt "had some type of design on it." Officer Moon passed defendant, parked his car, got out of the car, and approached defendant to ask for some identification.

Defendant presented a North Carolina identification card, and Officer Moon ran his name and date of birth for a warrant check. Officer Moon learned that there was an outstanding warrant for defendant's arrest for a worthless check. After discovering the warrant, Officer Moon placed defendant under arrest and searched him. During the search, Officer Moon found in defendant's right pocket a Bic pen top with a clear plastic baggie containing a white powdery substance protruding out of it. Officer Moon believed the substance in the baggie was cocaine.

Defendant was 51 years old at the time of the stop and 52 at the time of trial. Despite the State's stipulation, Officer Moon testified that he learned that the suspects being sought for the robbery were approximately 18 years old only after he uncovered defendant's outstanding arrest warrant.

Defendant took the stand and testified that on the evening of 13 October 2007, he was walking to work at the Estes Trucking Company and was wearing clothing given to him by his employer: a gold hooded sweatshirt with thick black letters spelling "Estes" on it and a black hat with gold letters also spelling "Estes." As he was walking in the parking lot of the mall, Officer Moon stopped him and asked to see some identification.

Officer Moon told defendant that he fit the description of an armed robbery suspect. Defendant replied that he had just gotten off the bus and was walking to work. He then provided Officer Moon with his identification card. According to defendant, another officer arrived at that point and told Officer Moon, "[T]hat's not the one, he

don't fit the description." Defendant testified that at no time during the incident did he feel free to leave.

The trial court subsequently denied defendant's motion to suppress. Defendant noted his appeal from the denial of the motion and indicated that he desired to plead guilty based on that denial. The trial court sentenced defendant to five to six months imprisonment, suspended that sentence, and placed defendant on 24 months supervised probation.

## Discussion

The sole issue raised by this appeal is whether the trial court erred in denying defendant's motion to suppress. "The scope of review of the denial of a motion to suppress is 'strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law.' " *State v. Bone*, 354 N.C. 1, 7, 550 S.E.2d 482, 486 (2001) (quoting *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982)), *cert. denied*, 535 U.S. 940, 152 L. Ed. 2d 231, 122 S. Ct. 1323 (2002). The trial court's conclusions of law "must be legally correct, reflecting a correct application of applicable legal principles to the facts found." *State v. Fernandez*, 346 N.C. 1, 11, 484 S.E.2d 350, 357 (1997).

"An investigatory stop must be justified by a *reasonable suspicion*, based on objective facts, that the individual is involved in criminal activity." *In re J.L.B.M.*, 176 N.C. App. 613, 619, 627 S.E.2d 239, 243 (2006). "The only requirement is a minimal level of objective justification, something more than an unparticularized suspicion or hunch." *Id.* "To determine whether this reasonable suspicion exists, a court 'must consider the totality of the circumstances—the whole picture.' " *State v. Kincaid*, 147 N.C. App. 94, 97, 555 S.E.2d 294, 298 (2001) (quoting *State v. Watkins*, 337 N.C. 437, 441, 446 S.E.2d 67, 70 (1994)).

Defendant contends the trial court's conclusion that reasonable suspicion existed for the stop is unsupported by the findings of fact based on competent evidence. The trial court made the following findings of fact:

(1) *By way of stipulation* that on October 13th, 2007 the defendant, James Huey, was on a Charlotte area transit system bus which at some point was boarded by a police officer or police officers who asked the operator of the bus if anyone had got

[sic] on or off the bus recently and were told no by the bus operator and that at some point after that the defendant got off of that bus and shortly thereafter encountered Officer S. P. Moon of the Charlotte-Mecklenburg Police Department and that *Officer Moon was investigating a robbery and looking for possible suspects and had a description of the robbers which was two black males, age approximately eighteen years,* and had a clothing description.

(2) That Officer S. P. Moon has been in the Charlotte-Mecklenburg Police Department approximately seven years and on the offense date, 10-13-2007, was a patrol officer in uniform in a marked police vehicle.

(3) That at approximately 9:22 P. M. on that day he received a call reference [sic] a robbery of the person at an area outside of the Belk's department store in the parking lot area of the Northlake Mall, that the description that was given regarding the perpetrators of the robbery was as follows: Two black males, one wearing a light colored sweatshirt with a hood referred to as a "hoodie," bluejeans, and that the light colored hoodie had some type of markings or writing on it and the other individual was described as wearing dark clothing, a hoodie, and darker pants.

(4) That Officer Moon began to drive about the property of the Northlake Mall which is a large area and includes a road that runs along the outer boundaries of the area.

(5) As Officer Moon was driving along the road that circles the large area that is the mall area he observed a black male walking in the area wearing a light colored hoodie sweatshirt with hood and bluejeans, and he also noticed that the sweatshirt had a design on it.

(6) That it was approximately 9:30 P. M. when Officer Moon saw the defendant in the area described above.

(7) That the area was dimly light [sic] and Officer Moon told the defendant to stop, that he would like to speak with him.

(8) That the defendant did stop and Officer Moon asked him for some identification which the defendant presented which was a North Carolina identification card.

(9) Officer Moon obtained a name and date of birth from the identification card and ran a warrant check on the name and date

of birth by way of his police radio. Shortly after that Officer Moon received notification that there was an outstanding arrest warrant for the defendant.

(10) That Officer Moon placed the defendant under arrest for the outstanding warrant and placed handcuffed [sic] on him and searched the defendant incident to arrest.

(11) In the pocket of the clothing that the defendant was wearing Officer Moon found a writing instrument with a clear top and through the clear top could see a baggie protruding from inside the pen top and he could see that the baggie contained some white powdery substance which Officer Moon believed to be powder cocaine. Officer Moon also told the defendant he was being arrested for possession of a controlled substance in addition to the outstanding warrant.

(12) At some point another officer arrived and informed Officer Moon that the suspects were described as being approximately eighteen years old.

(13) *Officer Moon saw on the defendant's identification that he was considerably older than that but at that point had already learned of the outstanding arrest warrant and had already arrested and searched the defendant incident to that arrest.*

(Emphasis added.) The trial court then concluded that "Officer Moon was acting with reasonable suspicion in making an investigative detention of the defendant" and denied defendant's motion to suppress.

The trial court thus made a finding that the State had stipulated that Officer Moon was looking for a suspect who was approximately 18 years old, but subsequently found that Officer Moon did not learn the approximate age of the suspects until after he had already arrested and searched defendant. Consequently, the primary question posed by this appeal is whether the State was bound by its stipulation that Officer Moon knew at the time he made the initial contact with defendant that the suspects he was looking for were approximately 18 years old.

"A stipulation is a judicial admission and ordinarily is binding on the parties who make it." *State v. Murchinson*, 18 N.C. App. 194, 197, 196 S.E.2d 540, 541 (1973). In *State v. McWilliams*, 277 N.C. 680, 686,

178 S.E.2d 476, 480 (1971) (emphasis added) (internal citations and quotation marks omitted), our Supreme Court explained further:

> A stipulation of fact is an adequate substitute for proof in both criminal and civil cases. Such an admission is not evidence, but rather removes the admitted fact from the field of evidence by formally conceding its existence. It is binding in every sense, preventing the party who makes it from introducing evidence to dispute it, and relieving the opponent of the necessity of producing evidence to establish the admitted fact. *In short the subject matter of the admission ceases to be an issue in the case.*

Thus, under *McWilliams*, the State's stipulation in this case that Officer Moon knew the suspects were approximately age 18 when he first stopped defendant should have caused the question of what Officer Moon knew to "cease[] to be an issue in the case." *Id.*

The State, however, argues that because defendant failed to object when Officer Moon gave testimony that contradicted the stipulation, he waived his chance to challenge the admission of that testimony, and the State is not bound by its stipulation. As support for this argument, the State relies on *State v. Covington*, 315 N.C. 352, 338 S.E.2d 310 (1986). In *Covington*, the State stipulated that the victim would be unable to make any identification of the co-defendants and, therefore, the State would not be asking the victim to identify the defendant in court. *Id.* at 358, 338 S.E.2d at 314. On appeal, the defendant argued that the State violated this stipulation when the victim identified him as one of the intruders. *Id.* at 314-15. The Court rejected this argument, holding that because the defendant failed to object to the victim's references to the defendant as one of the intruders, he had "waived his right to assign as error the prior admission of the evidence." *Id.* at 359, 338 S.E.2d at 315.

The stipulation in *Covington* and the stipulation in this case served different purposes. In *Covington*, the stipulation was designed to keep certain evidence away from the jury. The defendant could have enforced that stipulation by objecting at the proper time when the evidence was sought to be admitted. In this case, however, the stipulation's purpose was to resolve an issue of fact for purposes of the trial court's decision on the motion to suppress. Defendant did not need to object to Officer Moon's testimony—that testimony simply could not be the basis for a finding by the trial court contrary to the stipulation.

The State also points to *State v. Flippen,* 349 N.C. 264, 271, 506 S.E.2d 702, 706 (1998), *cert. denied,* 526 U.S. 1135, 143 L. Ed. 2d 1015, 119 S. Ct. 1813 (1999), in which the State and the defendant had, during the defendant's first capital trial, stipulated that the defendant had no significant history of prior criminal activity. After the Supreme Court, in the appeal from that first trial, ordered a new capital sentencing hearing, the defendant unsuccessfully sought, based on the stipulation in the first trial, to have the trial court give a peremptory instruction on the mitigating circumstance of no significant history of prior criminal activity. On appeal from the second sentencing hearing resulting again in the death penalty, the Supreme Court concluded that the trial court did not err in refusing to give the instruction because " '[a]ny evidence that the trial court "deems relevant to sentenc[ing]" may be introduced in the sentencing proceeding.' " *Id.* (quoting *State v. Heatwole,* 344 N.C. 1, 25, 473 S.E.2d 310, 322 (1996), *cert. denied,* 520 U.S. 1122, 137 L. Ed. 2d 339, 117 S. Ct. 1259 (1997)). The Court explained that "[a] prior stipulation or concession regarding *capital sentencing circumstances* does not limit the parties' presentation of evidence when relevant evidence contradicts that prior stipulation." *Id.,* 506 S.E.2d at 707 (emphasis added).

The State argues that based on *Flippen,* the State was permitted to rely upon evidence that contradicted the prior stipulation. We believe, however, that the Supreme Court in *Flippen* did not intend to overrule *McWilliams sub silentio,* but rather intended that *Flippen's* applicability should be limited to the unique circumstances of the capital sentencing context. The Court reached its conclusion in *Flippen* because in capital sentencing proceedings, "[t]he State must be allowed to present *any* competent evidence in support of the death penalty." *Id.* (emphasis original).

Here, the State has presented no justification for concluding that the State must be allowed to present "*any* competent evidence," *id.,* in a non-capital case—or, as in this case, in a hearing before the trial judge on a motion to suppress. That rationale underlying *Flippen* simply does not apply. We, therefore, hold that in non-capital cases such as this one, *McWilliams* still controls.

The State makes one additional argument for avoiding the *McWilliams* rule. The State points to the principle set out in 1 Kenneth S. Broun, *Brandis & Broun on North Carolina Evidence* § 160, at 514 (6th ed. 2004): "A stipulation as to the truth of facts which would be testified to by an absent witness bars introduction of contradictory evidence; but if the stipulation is only as to the testi-

mony the absent witness would give, the 'testimony' may be contradicted." Since the stipulation at issue in this case regarding Officer Moon's knowledge did not purport to describe how any absent witness would testify if present, but rather was an agreement "as to the truth of facts," the proposition recited by the State does not apply to the stipulation at issue in this case.

In any event, the subject of stipulations arose in this case because defendant had subpoenaed the bus driver, but when the bus driver arrived for the hearing, he did not have the records about which defendant wanted to question him. In order to resolve the problem, the State agreed to stipulate that officers got on the CATS bus, and the driver told them no one had gotten on recently—the truth of the facts to which the bus driver would testify.

At the same time, the State also agreed to stipulate that Officer Moon was originally told that the suspects were approximately 18 years old. Even if one could read the principle in *Brandis & Brown* as the State does—applying to all facts that would be the subject of the testimony of absent witnesses and not just a recitation of what an absent witness would say if called to testify—that principle would not apply to the Officer Moon stipulation because that stipulation did not involve facts about which the bus driver would have testified. The bus driver had no knowledge and would not have testified about what Officer Moon—who was not one of the officers on the bus—knew regarding the description of the suspects.

The State has not, therefore, presented any persuasive basis for excepting this case from the holding of *McWilliams*. We, therefore, hold that the State was bound by its stipulation that Officer Moon knew the suspects he was looking for were approximately 18 years old. Because the issue was removed from the case, the trial court could not rely upon Officer Moon's testimony otherwise, but rather was required to accept, in making its determination on the legality of the stop, that Officer Moon, at the time he stopped defendant, was looking for suspects who were approximately age 18. If we take all of the trial court's other findings of fact as true, but strike the findings suggesting that Officer Moon did not know the age of the suspects until after he detained defendant, then the findings of fact do not support the trial court's conclusion that Officer Moon had reasonable suspicion to detain defendant.

In *United States v. Meadows*, 878 F. Supp. 234, 235, *vacated in part on other grounds on reconsideration*, 885 F. Supp. 1 (D.D.C.

1995), the police received a radio transmission to be on the lookout for a robbery suspect described as a black male, five feet nine inches tall, weighing 140 pounds, and having a medium brown complexion. In addition, it was reported that the suspect was wearing a brown leather jacket, jeans, brown suede boots, and a black knit ski hat. *Id.* The police officers stopped the defendant, a black male of medium brown complexion, who was six feet one inch tall and weighed 247 pounds. He was wearing a black leather jacket, light colored pants, brown suede boots, and a black knit cap. *Id.* After a search, the defendant was charged with narcotics and weapons violations. *Id.* He subsequently moved to suppress the evidence of the search, contending the officers had no reasonable suspicion to stop him. *Id.*

In reviewing this issue, the court explained that "[i]n the context of a *Terry* stop that flows from a suspect's description by a crime victim or a tipster, a court must compare the description to the defendant with regard to such factors as clothing, age, race, physical build and proximity to the crime scene." *Id.* at 238. The court reasoned that "[t]here [was] simply not the confluence of factors necessary to justify the stop in this case." *Id.* Although the defendant "did match the clothing description fairly closely" and was of the same race as the suspect, the court noted that after that, "the similarities between Larry Meadows and the description on the lookout fade[d]." *Id.* While the description of the suspect was for a lone man on foot, the defendant was with two companions and headed for an automobile, nine blocks from the crime scene. *Id.*

The court explained:

These relatively minor discrepancies could be overlooked in light of the similarity in clothing, race and complexion. When viewed in conjunction with the physical build of Larry Meadows, however, these factors mandate suppression. The lookout was absolutely clear: the suspect was a black man who was five feet nine inches tall and weighed 140 pounds. Larry Meadows is six feet one inch tall black man who, on the night of his arrest, weighed 247 pounds. This is a difference of four inches in height and *107* pounds in weight. It is impossible to conclude that a reasonable officer could have believed that Larry Meadows matched the lookout based on these factors alone. The *gross* disparity between the lookout and Larry Meadows on these two factors is particularly critical because, unlike clothing and location, height and weight cannot be altered in twenty minutes time.

Officer Robinson may not be a good judge of height and weight from a distance. He may, therefore, have been justified in approaching Larry Meadows initially due to the clothing description alone. However, once he stood next to Larry Meadows, Officer Robinson had to realize that the lookout was for a man shorter and 45-50 pounds lighter than the officer himself, and Larry Meadows is three inches taller and 57-62 pounds heavier than the officer himself. At that point, Officer Robinson should have let Larry Meadows go and the interaction between the police and these defendants should have ceased.

*Id.* at 238-39. The court then concluded that because "the initial stop of Larry Meadows was not justified by reasonable articulable suspicion, all of the evidence or statements seized by the officers as to all three defendants must be suppressed." *Id.* at 239.

Similarly, here, the suspects were described as being approximately 18 years old, while defendant was 51 years old at the time of the stop. Even if Officer Moon could not tell defendant's age when he initially saw defendant walking and pulled his patrol car over to speak with him, once Officer Moon was face to face with defendant, Officer Moon should have been able to tell that defendant was much older than 18 years of age. In any event, as soon as defendant handed Officer Moon his identification card with his birth date, Officer Moon knew that defendant did not match the description of the suspects, and, at that point, the interaction between Officer Moon and defendant should have ended.

The trial court's conclusion that Officer Moon had reasonable suspicion to detain defendant is not supported by those findings of fact based on competent evidence. We must, therefore, reverse. *See also United States v. Brown*, 448 F.3d 239, 248 (3d Cir. 2006) (holding that because defendant and companion did not match age, height, or facial features of suspects, police had no reasonable suspicion to stop them).

Reversed.

Judges ROBERT C. HUNTER and CALABRIA concur.